777 F.2d 465
 Blue Sky L. Rep. P 72,320, Fed. Sec. L. Rep. P 92,394
B.G. TOOMBS, Plaintiff/Appellant,
v.
Michael F. LEONE, Jr., American Food Resources, Inc., Harlyn
C. Enholm, Joy S. Davis, James M. Davis, Thomas E. Perkins,
dba Thomas E. Perkins & Associates, Commercial Fleet
Operations, Ltd., and Seafood Special, Ltd., Defendants/Appellees.
 No. 84-6039.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 3, 1985.
Decided Nov. 26, 1985.
 
 Robert K. Schraner, Miller, Boyko & Bell, San Diego, Cal., for plaintiff, appellant.
 Michael W. Stelzer, Fresno, Cal., for defendants, appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before SNEED, NELSON, and NORRIS, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 B.G. Toombs appeals the decision of the district court to dismiss all of his claims pursuant to Fed.R.Civ.P. 41(b) and to impose sanctions against his counsel for failure to comply with the court's Local Rule 235-4(j). We affirm both the 41(b) dismissal and the imposition of sanctions.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In early 1978, Toombs paid $150,000 for a 15% share in Commercial Fleet Operations, Ltd. ("CFO"), a limited partnership organized by general partners Michael Leone and American Food Resources, Inc., intending to operate a commercial fishing venture off the coast of Colombia, South America.[1]
 
 
 3
 At the first investor meeting, in October 1978, Leone stated that he had replaced CFO's manager, and that CFO would not fish for lobster, red snapper, and conch, as originally planned, but instead would fish for shrimp. Leone offered to buy out the investors dissatisfied with these changes. At the next meeting, in May 1979, Leone told investors that he had replaced the second manager with yet a third, and that because of financing and licensing problems, as well as unforeseen competition, projections for the venture were revised downward. He again offered to buy out dissatisfied investors. At a third meeting, in January 1980, projections were again revised downward, and at a fourth meeting, in May 1980, Leone asked for additional investor money and stated that he would try to sell the boats and close the fishing operation by the following April. In October 1981, the boats were sold in order to avoid bank foreclosures.
 
 
 4
 Thereafter, on March 4, 1981, Toombs filed this lawsuit, alleging violations of federal and state securities laws common law fraud, negligent mismanagement, and breach of fiduciary and contractual obligations. After Toombs presented his evidence at trial, the district court granted CFO's[2] motion to dismiss "on the ground that upon the facts and the law the plaintiff ha[d] shown no right to relief." Fed.R.Civ.P. 41(b).
 
 
 5
 The court also imposed sanctions against Toombs's counsel for failure to comply with Local Rule 235-4(j) of the United States District Court for the Southern District of California. The rule provides that briefs must be served and filed and copies of exhibits exchanged "no less than seven calendar days prior to the date on which the trial is scheduled to commence." Toombs's counsel filed a 148 page brief and 282 exhibits on the morning of the scheduled trial. When trial was convened on March 10, 1983, CFO's counsel moved to continue the trial and, in the alternative, to strike Toombs's late submissions from the record. Following consideration of respective counsels' arguments, the district court granted the motion for continuance and ruled that sanctions would be imposed on Toombs's counsel in an amount designed to reimburse CFO for attorney's fees incurred because of the continuance.
 
 ISSUES
 
 6
 I. Whether Toombs's claim under Section 12(1) (sale of an unregistered security) of the 1933 Securities Act is time-barred.
 
 
 7
 II. Whether Toombs's other federal securities claims were properly dismissed.
 
 
 8
 III. Whether Toombs's state securities and common law fraud claims were properly dismissed.
 
 
 9
 IV. Whether Toombs's other common law claims were properly dismissed.
 
 
 10
 V. Whether the district court's imposition of monetary sanctions against Toombs's counsel was an abuse of its discretion.
 
 DISCUSSION
 
 11
 I. Toombs's Section 12(1) Claim is Time-Barred by the Statute of Limitations Set Forth in Section 13
 
 
 12
 Toombs alleged that the offer, sale, conveyance, and delivery of the CFO interests violated Section 12(1) of the Securities Act of 1933, 15 U.S.C. Sec. 77l (1). That section creates civil liability where mails and other instrumentalities of interstate commerce are used in connection with the sale, delivery, or offer of sale of an unregistered security, as prohibited by Section 5 of the 1933 Act, 15 U.S.C. Sec. 77e.
 
 
 13
 Section 13 of the same Act, 15 U.S.C. Sec. 77m, imposes a requirement of timeliness in the prosecution of a Section 12(1) cause of action. It states, in relevant part: "No action shall be maintained ... to enforce a liability created under section ... 77l (1) of this title, unless brought within one year after the violation upon which it is based." Toombs's claim is thus governed by a one-year limitation period measured from the date of CFO's last sales-related activity.
 
 
 14
 In asserting a violation of Section 12, the plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations. See Ingenito v. Bermec Corp., 441 F.Supp. 525, 553 (S.D.N.Y.1977); Kroungold v. Triester, 407 F.Supp. 414, 419 (E.D.Pa.1975). Toombs alleges that he purchased his interest in CFO on March 15, 1978. He makes no allegation with respect to the date upon which his securities were delivered. Nor does he allege any dates upon which securities were sold to other CFO investors.[3] Thus, this court must take March 15, 1978 as the time of the alleged violation. Toombs filed his lawsuit more than one year later, on March 4, 1981. Accordingly, we find that Toombs's Section 12 claim is time-barred by the one-year limitations period.
 
 
 15
 Having disposed of the Section 12(1) claim on limitations grounds, we need not reach the substance of Toombs's claim--that because there was insufficient evidence to show that CFO's offering was private, it did not qualify for exemption from the securities registration requirements.
 
 
 16
 II. Toombs's Other Federal Securities Claims Fail for Lack of Proof that CFO Misstated or Omitted a Material Fact
 
 
 17
 Toombs also alleged violations of Sections 12(2)[4] and 17 of the 1933 Securities Act, 15 U.S.C. Secs. 77l (2) and 77q, Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. Secs. 78j (b), 78t (a), and 78t (b), and Rule 10b-5, 17 C.F.R. Sec. 240.10b-5. A required element of proof under all of the provisions is a misstatement or omission of material fact in connection with an offer or sale of a security.
 
 
 18
 The district court found that none of the information contained in the CFO broker/dealer summary misstated or omitted a material fact.[5] A fact is material if its existence or nonexistence is a matter to which a reasonable person would attach importance in determining his choice of action in the transaction. TSC Industries v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1306 (9th Cir.1982) (citing Northwest Paper Corp. v. Thompson, 421 F.2d 137, 138 (9th Cir.1969)); SEC v. Murphy, 626 F.2d 633, 643 (9th Cir.1980).
 
 
 19
 The question of materiality is a mixed question of law and fact, but involves "assessments peculiarly within the province of the trier of fact." Arrington v. Merrill Lynch, Pierce, Fenner & Smith, 651 F.2d 615, 619 (9th Cir.1981). See also TSC Industries, 426 U.S. at 450, 96 S.Ct. at 2133. It is therefore reviewed for clear error. Arrington, 651 F.2d at 619; see also United States v. McConney, 728 F.2d 1195, 1203 (9th Cir.1984) ("essentially factual" inquiry subject to clearly erroneous review) (quoting Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982)). A finding is clearly erroneous only when, although there is evidence to support it, the court is firmly and definitely convinced that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); Arrington, 651 F.2d at 619; Thomas v. S.S. Santa Mercedes, 572 F.2d 1331, 1335 (9th Cir.1978).
 
 
 20
 Having reviewed the trial record, we are not so convinced here. Because the partnership's operation did not predate his entry into the venture, Toombs cannot complain that he received no financial information about the issuer. See SEC v. Murphy, 626 F.2d at 643. Further, the district court determined that Toombs knew CFO was a new business enterprise, and that this information was not material to him. While the broker/dealer summary upon which Toombs relied did not set forth the risks of investment, Toombs "essentially admitted he was aware of these various risks." The summary also neglected to state whether CFO would buy or lease its fishing boats. However, we are not persuaded that the district court was clearly erroneous in concluding that the issue was immaterial to Toombs at the time of his investment, given Toombs's own admission "that it was not an issue" when he purchased his interest. Similarly, there is sufficient evidence to support the district court's finding that there was no omission with respect to the terms of CFO's purported contract with its initial manager and no misstatement with respect to his qualifications. Finally, Toombs complains that the summary indicated that the boats would be fishing for red snapper, lobster, and conch, and that it made no reference to shrimp. Again, there was sufficient evidence for the district court to conclude that CFO's decision to fish for shrimp was immaterial to Toombs's decision to invest. Moreover, the district court concluded that CFO's decision was made after the close of its offering. Materiality, of course, must be determined in light of facts existing at the time of nondisclosure or misinformation. SEC v. Texas Gulf Sulphur, 401 F.2d 833, 863 (2d Cir.1968). Accordingly, CFO made no material misstatement or omission; the aforementioned federal securities law claims were properly dismissed.[6]
 
 
 21
 III. Toombs's State Securities and Common Law Fraud Claims Fail for Lack of Proof that CFO Misstated or Omitted a Material Fact
 
 
 22
 Toombs's state securities and common law fraud claims fail for the same reason. The California Corporations Code, Secs. 25400, et seq. and 25500, et seq., and the Alaska Securities Act, Sec. 45.55.10, et seq., both require a plaintiff to prove his reliance on misrepresentations or omissions of material fact in order to establish a claim for fraud.[7] So too under the common law of both California and Alaska must a plaintiff show "materiality." See Brown v. Ward, 593 P.2d 247, 250 (Alaska 1979); Hobart v. Hobart Estate Co., 26 Cal.2d 412, 422, 159 P.2d 958 (1945).
 
 
 23
 IV. Toombs's Other Common Law Claims Were Properly Dismissed
 
 
 24
 Toombs's other common law claims were also properly dismissed. He failed to adduce adequate evidence to establish negligent mismanagement, breach of fiduciary duty, or breach of contract.
 
 A. Negligent Mismanagement
 
 25
 Toombs charged CFO with negligent mismanagement of the partnership for its failure to research the fishing venture adequately and to hire experienced managers and employees. Yet he introduced no evidence of an industry standard for management of a fishing venture. And the evidence presented by CFO further belies his claim: CFO attained catches and revenues comparable to those of other fishing ventures in the area during its lifetime. Moreover, CFO was formed only after consultation with an experienced participant in the fishing industry; and thereafter, projections of fishing catch were prepared with the aid of industry journals and publications.
 
 B. Breach of Fiduciary Duty
 
 26
 Similarly, Toombs failed to adduce sufficient evidence to support his claim that the partners of CFO breached a fiduciary duty owed to him. He could not show that any other partner had gained an advantage over him.[8]
 
 C. Breach of Contract
 
 27
 Finally, Toombs alleged that CFO breached the partnership agreement by misapplying and misappropriating its funds. Yet Toombs was unable to show that any of CFO's expenditures were improper or that its disposition of assets caused any damages. Accordingly, the claim was properly dismissed.
 
 
 28
 V. The District Court's Imposition of Monetary Sanctions Against Toombs's Counsel did not Constitute an Abuse of DiscretionThe district court levied sanctions against Toombs's counsel for failure to comply with Local Rule 235-4(j).[9] Its decision to do so is reviewable for an abuse of discretion. United States v. Associated Convalescent Enterprises, 766 F.2d 1342, 1346 (9th Cir.1985). Counsel's submission on the morning of trial of a 148-page trial brief, a 34-page exhibit list documenting some 282 exhibits, and the exhibits themselves constituted, in the court's opinion, an "egregious" violation of its rules.
 
 
 29
 After entertaining oral argument, the court announced its decision to continue the trial and to impose monetary sanctions against Toombs's counsel on the basis of CFO's wasted preparation costs. A district court's award of attorney's fees in response to attorney misconduct in litigation may be founded upon the "inherent power" of the judiciary, as acknowledged in Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), or upon the authority conferred by 28 U.S.C. Sec. 1927.[10]
 
 
 30
 In Roadway Express, the Supreme Court held that monetary sanctions against counsel are within a court's powers when counsel has "willfull[y] abuse[d] judicial processes" or otherwise conducted litigation in bad faith. Such sanctions are appropriate under Section 1927 when counsel has acted "recklessly or in bad faith."[11] Associated Convalescent Enterprises, at 1346 (quoting United States v. Blodgett, 709 F.2d 608, 610 (9th Cir.1983)). While the district court made no express finding as to sanctioned counsel's state of mind, the record sets forth sufficient evidence to support its decision. See Optyl Eyewear Fashion Int'l Corp. v. Style Companies, 760 F.2d 1045, 1051 (9th Cir.1985) ("A district court's failure to make express findings does not require a remand if 'a complete understanding of the issues may be had [from the record] without the aid of separate findings.' ") (citations omitted).
 
 
 31
 Responding to the court's inquiry into their failure to comply with Local Rule 235-4(j), Toombs's counsel stated: "[It] is impossible for us to offer ... a reasonable excuse." They acknowledged their awareness of the rule and admitted that they had deliberately flouted it in order to produce a thorough and complete brief and set of exhibits.[12] Of course, counsel's avowed concern for throughness and completeness is not inconsistent with a finding of recklessness or bad faith. Filing deadlines are not met precisely because the briefs and exhibits to be filed are not yet complete.
 
 
 32
 Because Toomb's counsel received no advance notice that the district court was considering the imposition of sanctions, the question remains whether they had sufficient opportunity to demonstrate that their conduct was not undertaken recklessly or willfully. We conclude that they were given such an opportunity. At a hearing for which they did receive advance notice, Toomb's counsel were able to argue against a motion to strike their brief and exhibits from the record. Any mitigating excuse they might have offered for their conduct presumably would have been forthcoming in that hearing. Thus, they did receive notice that the court would consider their reasons for failing to comply with Local Rule 235-4(j), and had sufficient opportunity to explain their conduct. Accordingly, the district court's provision of due process was adequate. See Roadway Express, 447 U.S. at 752, 100 S.Ct. at 2455 (requiring fair notice and opportunity for hearing on record); Miranda v. Southern Pacific Transportation Co., 710 F.2d 516, 522-23 (9th Cir.1983) (requiring opportunity to prepare defense and explain questionable conduct at hearing).
 
 
 33
 Counsel to Toombs further argue that the award of attorney's fees must be reversed because of the district court's failure to consider explicitly the twelve factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), for determining the amount of attorney's fees awards.[13] These factors need not be applied rigidly, however. See, e.g., Zaldivar v. City of Los Angeles, 590 F.Supp. 852, 856 (C.D.Cal.1984); White v. City of Richmond, 559 F.Supp. 127 (N.D.Cal.1982), aff'd, 713 F.2d 458 (9th Cir.1983); see also Copeland v. Marshall, 641 F.2d 880, 890 (D.C.Cir.1980) (en banc) (factors redundant and imprecise and thus not rigidly applied). The district court expressly considered the time CFO's counsel spent preparing for trial and their hourly wage rates. It further reduced CFO's recovery to 40% of its costs, in view of the court's estimate that only "40% of the time would necessarily have to be repeated in preparation again for the trial." That the court did not proceed ritualistically through Kerr 's twelve factors is not fatal to its imposition of a sanction of attorney's fees. The court's award in this case did not constitute an abuse of its discretion.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Toombs was first approached about making an investment in CFO as early as January 1978. In mid-February, Toombs tendered a check for $75,000, equal to one-half the purchase price for his 15% interest. CFO returned that check for unspecified reasons on March 8, 1978; a March 10, 1978 letter acknowledged receipt of Toombs's $75,000 replacement check. Leone and American Food executed a limited partnership agreement on March 8, 1978, and one week later, Toombs executed a Subscription Agreement by which he formally made "application to become a Limited Partner in [CFO]."
 
 
 [2]
 The appellees will be referred to collectively as "CFO"
 
 
 [3]
 Section 13 of the 1933 Act, 15 U.S.C. Sec. 77m, does not make clear whether the one-year requirement may be satisfied by the allegation of sales-related activities in which the plaintiff was not involved. We need not decide this issue today, however, because Toombs failed to adduce any facts respecting CFO's sales activities with other investors
 
 
 [4]
 Precluding disposition of Toombs's Section 12(2) claim on statute of limitations grounds are unresolved questions of fact. The Securities Act of 1933 provides, in pertinent part, that no action shall be maintained under Section 12(2)
 unless brought within one year after discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brouight to enforce a liability ... under [Section 12(2) ] ... more than three years after the sale.
 While Toombs probably became aware (or should have become aware) of any alleged misstatements or omissions more than a year before he filed his complaint, the district court made no factual finding to that effect. With regard to the three year period, it is unclear when the sale to Toombs was consummated.
 
 
 [5]
 Toombs contends that the district court's findings of fact are generally inadequate because they are "mixed ... [with conclusions of law] throughout its opinion," and not set out "specially," as required by Fed.R.Civ.P. 52(a). However, to be adequate, factual findings need only be explicit enough to give this court a clear understanding of the basis of the district court's decision and to enable us to determine the grounds on which the district court reached its decision. See Nicholson v. Board of Education, 682 F.2d 858, 866 (9th Cir.1982). In that regard, the district court's findings in this case are adequate
 
 
 [6]
 Toombs also failed to satisfy the requirement of scienter under Rule 10b-5 and Section 17. He offered no evidence of either CFO's intent to defraud or its recklessness. See Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1311 (9th Cir.1982) (scienter requirement satisfied by proof of intent to deceive, manipulate, or defraud, or proof of reckless conduct) (citing Nelson v. Serwold, 576 F.2d 1332 (9th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978))
 
 
 [7]
 Moreover, Toombs's claim under the California statute is time-barred. No action may be maintained under the California Code for the sale of an unqualified security more than two years after the violation upon which it is based. Cal.Corp.Code Sec. 25507(a). Insofar as Toombs concedes that his CFO purchase occurred no later than March 15, 1978, more than two years before he filed his complaint, he is precluded from asserting a cause of action under the California Code
 The Alaska Securities Act provides that no action may be brought more than three years after the date of the contract of sale. Because Toombs's concession of a March 15, 1978 purchase date does not fall outside the three-year period, and because any allegation of an earlier date is a matter of factual dispute (see supra note 4), the Alaska claim must be decided on substantive grounds.
 
 
 [8]
 Even if, as Toombs suggests, the "advantage" standard is inappropriate for determining whether a breach of fiduciary duty has occurred between partners, Toombs was unable to satisfy even his proposed alternate standard--requiring a showing of either bad faith or recklessness
 
 
 [9]
 Local Rule 235-4(j) provides:
 Unless otherwise ordered, the parties shall, not less than seven calendar days prior to the date on which the trial is scheduled to commence:
 (i) Serve and file briefs on all significant disputed issues of law, including foreseeable procedural and evidentiary issues, setting forth briefly the party's position and the supporting augments and authorities;
 * * *
 (iv) Exchange copies of all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the trial other than for impeachment or rebuttal.
 
 
 [10]
 The imposition of monetary sanctions on counsel has been looked upon favorably by this court:
 We believe that imposing a monetary penalty on counsel is an appropriate sanction considerably less severe than holding counsel in contempt, referring the incident to the client or bar association, or dismissing the case. If we were to foreclose the district court from imposing this relatively mild penalty for violation of the local rules, district courts would be forced to resort to more severe sanctions. We also believe it is appropriate that sanctions such as these are directed at the lawyers responsible, rather than the litigants.
 Miranda v. Southern Pacific Transp. Co., 710 F.2d 516, 520-21 (9th Cir.1983) (citations omitted).
 
 
 [11]
 Under Section 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."
 
 
 [12]
 Further, counsel failed to inform the court beforehand of their inability to comply with the local rules
 
 
 [13]
 Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professionsal relationship with the client; and (12) awards in similar cases. Kerr, 526 F.2d at 70. Insofar as the award of attorney's fees in this case constituted a pretrial imposition of sanctions, not all of the Kerr factors are even relevant