**Roman STERLIN, Plaintiff,**

v.

**BIOMUNE SYSTEMS, INC.; David Derrick; Dr. Aaron Gold; Charles J. Quantz; Jack Solomon; Genesis Investment Corporation; and the Institute for Social and Scientific Development, Defendants.**

Civil No. 2:95–CV–944G.

United States District Court,
D. Utah,
Central Division.

April 2, 1997.

Thomas R. Karrenberg, John T. Anderson, Anderson & Karrenberg, Salt Lake City, UT, Edward Labaton, Lynda J. Grant and James M. Strauss of Goodkind, Labaton, Rudoff & Sucharow, L.L.P., New York City, for Plaintiff.

Nolan S. Taylor, Mark W. Dykes, John W. Cotton and Helen L. Duncan, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Salt Lake City, UT, for Defendants Biomune Systems, Inc., David Derrick, Dr. Aaron Gold and Charles J. Quantz.

Blake T. Ostler, Kirton & McConkie, Salt Lake CIty, UT, for Defendant The Social Institute for Social and Scientific Development.

J. Michael Bailey, J. Gordon Hansen, Parsons, Behle & Latimer, Salt Lake City, UT, for Defendants Jack Solomon and Genesis Investment.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

Oral argument was heard on Defendants' Motions to Dismiss the Complaint. Thereafter, upon further briefing of the motions based on an Amended Complaint which the court permitted to be filed, the motions were taken under advisement. Plaintiff is represented by Thomas R. Karrenberg and John T. Anderson of Anderson & Karrenberg and Edward Labaton, Lynda J. Grant and James M. Strauss of Goodkind, Labaton, Rudoff & Sucharow, L.L.P. Defendants Biomune Systems, Inc., David Derrick, Dr. Aaron Gold and Charles J. Quantz are represented by Nolan S. Taylor, Mark W. Dykes, John W. Cotton and Helen L. Duncan of LeBoeuf, Lamb, Greene & MacRae, L.L.P. Defendant The Social Institute for Social and Scientific Development is represented by Blake T. Ostler of Kirton & McConkie. Defendants Jack Solomon and Genesis Investment are repre-

sented by J. Michael Bailey and J. Gordon Hansen of Parsons, Behle & Latimer.

Being fully advised, the Court now enters its Memorandum Decision and Order.

## FACTS

Roman Sterlin ("Sterlin") sued Biomune Systems ("Biomune"), David Derrick ("Derrick"), Aaron Gold ("Gold"), Charles Quantz ("Quantz"), Jack Solomon ("Solomon"), The Institute for Social and Scientific Development ("Institute") and Genesis Investment ("Genesis") for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 of the Securities and Exchange Commission ("SEC"), Section 20(a) of the Exchange Act and Section 20A(a) of the Exchange Act.

Biomune is a biotech company engaged in developing a protein called Immuno–C which is used in human immune systems in the treatment of intestinal disorders. Derrick is president, CEO, chairman of the board and main spokesperson. Gold is a director of Biomune and has acted as an officer and director of Solomon created entities. Solomon founded Biomune and the Institute, created Genesis Trust and Genesis Investment, and is a member of Biomune's Business Advisory Board.

Genesis, a Utah Corporation, at one time was Biomune's largest shareholder and is owned by the Genesis Trust, whose beneficiaries are Solomon's family members. Genesis' directors are Derrick, Gold and Barry Mintz [1] and its officers are Mintz, David Solomon, Gregg Solomon [2] and Derrick. As a consequence of their trusteeships and directorships of the Genesis Trust, Derrick and Gold had control of Genesis' over 4.5 Million shares of Biomune common stock. As of February 15, 1994, Genesis had the sole voting power over 4,545,963 shares of Biomune's Common Stock, including 80,072 warrants exercisable at $3.00 per share.

The Institute is a Utah Corporation, founded by Solomon and directed by Gold and others. The Institute owned 180,000 shares of Biomune Stock plus warrants to purchase an additional 250,000 shares. The Institute was incorporated in September 1993, and ADP (A company owned by Derrick) periodically consults with and manages the on-going bookkeeping affairs of the Institute. The Institute sold tens of thousands of shares of Biomune common stock, and it loaned money to Biomune in exchange for Biomune stock and warrants. Quantz is a practicing attorney in California who at all times relevant was a director of Biomune.

On August 1, 1994, *Barron's* published an article entitled "A Question of Immunity" which was critical of Biomune, Derrick and Solomon. The article states:

> The story you're about the read is true. And in its broad outlines, alas, oft-told. Not even the names have been changed. Maybe its retelling will protect a few innocents.

> [The main body of the article is critical of Biomune's research and claims regarding the effectiveness of Immuno–C.]

> Concludes Hatch, who studied under one of Biomune's founders at Brigham Young University in the mid-Seventies, "I don't rule out the one in 100 chance that Biomune actually has something. But if I were betting, I'd say the other 99% is going to rule."

> And that's a bet, it turns out, based on considerably more than the scientific evidence. As Hatch knows—and anyone else who cares to take the trouble to research Biomune's corporate history can discover—ever since its December 1981 founding as New Age Corp.—the company's true raison d'etre hasn't been shrimp farming in Ecuador or tomato cultivation in Egypt or immunity enhancers or any of the other ventures it's run through. It's been to sell shares—or, at the least, to use shares as currency to keep any number of its promoters' ventures afloat.

> And who are those promoters? The list is long and their connections colorful, but we will list only one. Biomune founder and consultant of long-standing is Salt Lake

---

1. Barry Mintz is a Canadian national and friend of Solomon.

2. David and Gregg Solomon are Jack Solomon's sons.

City philanthropist, Jack D. Solomon. He owns no Biomune shares, according to the company's SEC filings. But a byzantine array of entities in one way or another affiliated with Solomon own [sic] more than 35% of its stock. As it happens, way back when—in 1983—the federal district court in Nevada permanently enjoined Solomon from violations of the registration, anti-fraud, stock ownership reporting and proxy solicitation provisions of the securities laws. Without admitting or denying the charges, Solomon consented to the filing of that injunction rather than fight SEC charges that, as president and chairman of Advanced Patent Technology Inc., he had purported private placements between 1975 and late 1980 to raise money for APT's purchase of a Las Vegas Slot machine route business and other gaming-related enterprises. Over that span, APT's shares climbed from pennies to just under $10—and they subsequently went back to pennies, just before being delisted from NASDAQ.

There's a lesson in there somewhere.

Kathryn M. Welling, *A Question of Immunity,* BARRON'S, Aug. 1, 1994. Sterlin filed the original complaint October 12, 1995.

Plaintiff alleges that a "fraud network" includes friends and relatives of Solomon and Derrick engaged in a scheme to manipulate Biomune's financial statements and inflate the price of Biomune stock. Biomune allegedly issued statements, press releases, shareholder letters and articles which contained misrepresentations or omissions in violation of Federal Securities Laws. Plaintiff asserts that a plaintiff class consists of persons who purchased the common stock of Biomune during a class period beginning on September 15, 1993 through January 12, 1995. Plaintiff also asserts that a defendant class of insider traders consists of Derrick, the Institute, and Genesis.

The alleged fraud includes manipulation of Biomune's capital and surplus in order to "falsely" obtain a NASDAQ listing. Once that was obtained, the individual defendants allegedly could more easily inflate the price of Biomune Stock with false and misleading statements, and then "dump thousands of shares of Biomune stock on the market." Plaintiff also alleges that defendants made millions of dollars in "private placements" to foreign investors pursuant to Regulation § of the Securities Act of 1933 ("Regulation S").

In the Amended Complaint, Count I, against all defendants, alleges a violation of Section 10(b) of the Exchange Act and Rule 10b–5 of the SEC. Count II, against the individual defendants,[3] alleges that each individual defendant was a controlling person under Section 20(a) of the Exchange Act, and is therefore liable to Plaintiff for damages. Count III, against Derrick, Genesis and the Institute (as "insider trading defendants"), alleges a violation of Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder through a common and continuous plan to operate a fraud and deceit upon Plaintiff. As part of this alleged fraud, the insider trading defendants were to have used their positions as officers, advisors and majority stockholders of the company to engage in acts and a course of conduct which defrauded Plaintiff and those who purchased Biomune stock during the relevant period. Count IV, against Derrick, Genesis and the Institute, alleges a violation of Sections 20A(a) and 10(b) of the Exchange Act, wherein the "insider trading defendants" improperly earned profits on their sales of Biomune securities.

The dispositive issue before the court is whether the *Barron's* article triggers the one-year statute of limitations and bars the claims against all defendants.

### ANALYSIS

■ Biomune, Derrick, Gold, Quantz, Genesis, Solomon, and the Institute have filed motions to dismiss the amended complaint with prejudice. Each argues that the complaint is barred by the one-year statute of limitations because the *Barron's* article put Plaintiff on "inquiry notice." This court agrees.

■ While the issue of inquiry notice is often a factual issue for a jury, where the

---

**3.** The individual defendants are Derrick, Gold, Quantz and Solomon.

underlying facts are undisputed, even factually-based issues may be decided as a matter of law. *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir.1987). If it can be determined from the face of the documents and facts that a plaintiff was placed on notice of the possibility [4] of fraud, and he failed to exercise reasonable diligence in discharging that duty to inquire, the court is compelled to impute constructive knowledge of the fraud to the plaintiff and grant defendant's motion for summary judgment as a matter of law. *Lenz v. Associated Inns and Restaurants Co. of America,* 833 F.Supp. 362, 371 (S.D.N.Y. 1993).

■ The *Barron's* article was published on August 1, 1994. Plaintiff filed the original complaint October 12, 1995, over one year following the article's publication. The statute of limitations for claims under Section 10(b) [5] is triggered by "inquiry notice." In the Tenth Circuit, the discovery period is "one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of due diligence," and does not "commence only when a plaintiff has full knowledge of the existence of a claim. On the contrary, the one-year limitations period begins to run even when a plaintiff is placed on '*inquiry notice*' of possible *misrepresentations.*" *Anixter v. Home–Stake Production Company, et al.,* 939 F.2d 1420, 1437 (10th Cir.1991), *vacated on other grounds, Dennler v. Trippet,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992), *modified on other grounds,* 977 F.2d 1533 (1992) (citing *DeBruyne v. Equitable Life Assur. Soc. of the United States,* 920 F.2d 457, 466 (7th Cir.1990) (emphasis added)).[6] The Seventh Circuit has characterized the "triggering" facts for inquiry notice as "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale." *Cook v. Avien, Inc.,* 573 F.2d 685, 697 (1st Cir.1978). Section 13 holds Plaintiffs to a stringent standard of proof. *Anixter,* 939 F.2d at 1438; *Toombs v. Leone,* 777 F.2d 465, 468 (9th Cir.1985).

In *Anixter,* plaintiffs filed a lawsuit in March 1973 alleging Home–Stake Production Company and certain of its officers and di-

---

**4.** The 10th Circuit only requires notice of the *possibility* of fraud. *Anixter,* at 1438; see also *LaSalle v. Medco Research, Inc.,* 54 F.3d 443, 444 (7th Cir.1995). The Second Circuit requires that the triggering information must alert a reasonable person to the *probability* of misleading statements in violation of securities laws. *Morin et al. v. Trupin et al.,* 809 F.Supp. 1081, 1097 (S.D.N.Y.1993) (citing *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983)).

**5.** In 1991, the Supreme Court held that although the statute of limitations in Section 13 of the Securities Act of 1933 specifically applies to Section 11 and 12 violations, it also applies to Section 10(b) violations. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

**6.** The procedural history of the *Anixter* litigation is convoluted and deserves comment. In July of 1991, the Tenth Circuit decided *Anixter v. Home–Stake Production Company, et al. (Anixter I),* 939 F.2d 1420 (10th Cir.1991), *vacated on other grounds, Dennler v. Trippet,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992), dismissing plaintiffs claims as time-barred by the statute of limitations applicable to Section 10(b) actions. The Supreme Court granted the writ of certiorari, vacated the judgment and remanded the case for further consideration in light of the recently enacted Section 27 of the Securities and Ex-

change Act of 1934, 48 Stat. 902, as amended, 15 U.S.C. § 78aa. *Dennler v. Trippet,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992).

Following *Anixter I,* Congress proscribed the retroactive application of the *Lampf* decision, see footnote 5, *supra,* through inserting an amendment into the FDIC Improvement Act of 1991, Pub.L. No. 102–242, 1991 U.S.C.C.A.N. (105 Stat.) 2236, codified as § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1 (Supp. III 1991). This new section provided that the limitation period for any private civil action under Section 10(b) of the Securities and Exchange Act which commenced *prior to June 19, 1991,* shall be the limitation period provided by the law applicable in the jurisdiction. Any action previously dismissed as time barred, which would have been timely filed under the laws of the jurisdiction, is to be reinstated. On remand, the Tenth Circuit found that Section 27A was constitutional, and resuscitated plaintiffs' § 10(b) claim because Oklahoma has a two-year statute of limitations, and decided the substantive issue. *Anixter v. Home–Stake Production Company et al. (Anixter II),* 977 F.2d 1533 (10th Cir.1992).

Thus, although the time-barred case in *Anixter I* was reinstated under Section 27A, the critical date for retroactive application of jurisdictional statutes of limitation is June 19, 1991. Sterlin filed the original complaint October 12, 1995, therefore Section 27A is inapposite to this case.

rectors conspired to violate the federal securities laws in their sale of interests in oil and gas production programs. According to plaintiffs in *Anixter*, liability was predicated on an elaborate scheme to defraud investors. On February 10, 1971, the SEC filed a complaint against defendants for allegedly violating Section 10 of the Securities Act of 1933. *Id.* at 1429. Defendants consented to a final judgment permanently enjoining defendants from engaging in activities specified in the SEC complaint, and ordered them to offer each participant return of the purchaser price plus a pro-rata share of all income earned on the subscription date of purchase payment to the date of repayment. *Id.* at 1430. The Wall Street Journal, in February, 1971, reported the SEC investigation and allegations. Plaintiffs argued that the SEC investigation never exposed the root of the fraudulent operation. The Tenth Circuit held that the 1971 SEC investigation and Wall Street Journal article triggered inquiry notice that they may have been victims of fraud in connection with their acquisition of Home–Stake securities. *Id.* at 1438.

Plaintiff argues that the action was filed within the one-year statute of limitations because in defining the term "storm warning," courts have found that sufficient inquiry notice must *"relate [ ] directly* to the misrepresentation and omissions the Plaintiffs later allege in their action against the defendants." *Morin v. Trupin,* 809 F.Supp. 1081, 1097 (S.D.N.Y.1993) (emphasis in original). In *Morin,* a RICO claim case, Plaintiffs alleged that in making their investments in the Sacramento Office Park Associates ("SOPA"), they relied on false and misleading representations contained in the SOPA Series Private Placement Memorandum, solicitation letters, sales and promotional literature and on oral representations by various defendants. The *Morin* plaintiffs alleged that defendants Organek and Continental gave aid to the general fraud scheme, and that Continental was part of the association-in-fact necessary to assert a RICO claim because it knowingly used income from SOPA's offering to establish the Sacramento Enterprise within the meaning of 18 U.S.C. § 1962(a)[7]. *Id.* at 1095–96. The Defendants claimed that the RICO claims were barred by RICO's four year statute of limitations, and that the date of "inquiry notice" was the date plaintiffs received financial and tax information pertaining to their purchase. Plaintiffs responded that they were only on notice after property was sold at a foreclosure sale. *Morin,* 809 F.Supp. at 1096. The *Morin* court denied the motions to dismiss because the financial data received did not relate directly to the misrepresentations and omissions the plaintiffs later alleged in their action against defendants. *Id.* at 1097. Plaintiffs alleged specific nondisclosure and misrepresentations, "not merely inadequate characterization of the safety of their investment." *Id.*

Plaintiff argues that the *Barron's* article does not satisfy inquiry notice because many of the alleged fraudulent activities were not questioned or mentioned in the article, such as the Regulation S transaction,[8] the acquisition of Furtek Technologies,[9] the "settlement" with Genesis,[10] or the alleged mischaracterization of the Upton and Healey[11]

---

7. Section 1962(a) articulates in what context purchasing securities violates RICO. *See* 18 U.S.C. § 1962(a) (1993).

8. The article does mention the regulation § transaction: ". . . Derrick on Friday told Barron's that with the 'about $9.5 million' of funds it has raised in its recent private placements now in the bank, and 'virtually no debt,' the company has enough cash to complete its drug development program." Kathryn M. Welling, *A Question of Immunity,* Barron's, Aug. 1, 1994.

9. In November 1993, Biomune purchased Furtek Technologies, a small technology company. Plaintiff alleges that the price was inflated to "manipulate" Biomune's assets.

10. Biomune entered into a "settlement" agreement with Genesis Trust, in which Biomune sold back to Genesis Trust certain assets and notes payable owing to Genesis as a consequence of Biomune's purchase of those assets. Plaintiff alleges that this transaction allowed Biomune to claim no long term debt.

11. In 1993, Biomune retained Dr. Stephen Upton from the University of Kansas to perform mice experiments with Immuno–C. Plaintiff claims that the press release exaggerated Dr. Upton's results to inflate Biomune's stock price. A similar allegation is made with respect to further Immuno–C mice testing results made by Dr. Mark C. Healey.

results. Plaintiff further argues that although the article may imply by innuendo that Solomon had a greater role in Biomune than he did, these allegations have no bearing on claims asserted against the other defendants, where the allegations differ from those against Solomon. Plaintiff asserts that even if the article expressly accused Solomon of being a shadow officer of Biomune, it is still not "directly related" to the Amended Complaint's charges against Solomon, such that inquiry notice began to run at the time of the *Baron's* article. Plaintiff characterizes the article only as a skeptical article about Biomune's claims respecting its ability to push through its FDA application within 18 months, and that the stock price is a going concern among its auditors. Furthermore, Defendants' rebutted the accusations, publicly denying the accusations in the article through promulgating a dear shareholder letter.

■ This court finds Plaintiff's arguments unpersuasive. While the financial and tax information received by plaintiffs in *Morin* did not trigger the statute of limitations, surely the *Barron's* article satisfies the Tenth Circuit's inquiry notice requirement. Contrary to Plaintiff's assertion that the allegations made in this case must "directly relate" to the *Barron's* article, the statutory period does not run when a plaintiff has full knowledge of the existence of a claim or of each allegation in a claim, but when notice of the *possibility* of a claim arises. Plaintiff's view would require notice of each allegedly illegal claim in the complaint. Inquiry notice does not exact such minutia. A plaintiff need not fully discover the full exposition of the fraudulent scam to be on inquiry notice. *Anixter, at* 1438 (*quoting Kennedy v. Josephthal & Co.,* 814 F.2d 798, 802 (1st Cir.1987)).

■ Furthermore, awareness of a defendant's other lawsuit or criminal fraud conviction puts a plaintiff on inquiry notice of the probability of fraud within the transaction involving the plaintiff. *See, Lenz,* 833 F.Supp. at 375. The *Barron's* article reveals that Solomon, Biomune's founder, was permanently enjoined by a Nevada Federal District Court from violations of the registration, antifraud, stock ownership reporting and proxy solicitation provisions of the securities laws. He consented to the injunction, rather then fight the SEC charges that he illegally sold about 8.7 million shares of unregistered stock to raise money for APT's purchase of a Las Vegas slot machine route business and other gaming-related enterprises.

The *Barron's* article begins by noting that its purpose is to "protect a few innocents" of possible fraudulent activity with Biomune stock. The article also states that the list of promoters of Biomune is "long and their connections colorful, but will list only one." There is a "byzantine array of entities in one way or another affiliated with Solomon [which] own [sic] more than 35% of its stock." The implications of a fraud scheme extend beyond Derrick and Solomon, and encompasses all defendants because Plaintiff alleges that each defendant is involved in the same "fraud network." In *Anixter,* the SEC investigation and a Wall Street Journal article established inquiry notice. Here, the SEC investigation of Solomon and the *Barron's* article trigger inquiry notice. Accordingly, this court holds that Plaintiff's action is barred against all defendants by the one-year statute of limitations.

Based on the foregoing,

Defendants' motions to dismiss are GRANTED.

It Is SO ORDERED.

Counsel for Defendants are directed to prepare and lodge with the Court within 30 days a form of judgment consistent with this Memorandum Decision and Order after complying with local Rule 206(b).