Harold **KEMMERER** et al., Plaintiffs-Appellees,

v.

Mark L. **WEAVER** et al., Defendants-Appellants.

No. 18640.

United States Court of Appeals, Seventh Circuit.

June 22, 1971.

Everett E. Dahl, Midvale, Utah, for defendants-appellants.

Ronald A. Gullstrand, Aurora, Ill., for plaintiffs-appellees.

Before DUFFY, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

DUFFY, Senior Circuit Judge.

This suit was brought under the Securities and Exchange Act of 1933 (Title 15 U.S.C. § 77a et seq.) and the Securities and Exchange Act of 1934 (Title 15 U.S.C. § 78j) and Rule 10B–5 promulgated pursuant thereto (17 C.F.R. § 240.-10B–5). Plaintiffs claimed defendants offered for sale certain investment contracts wherein there was not a full, complete and fair disclosure of all the material facts.

Plaintiffs filed their complaint against the individual defendants together with defendant Weavers' Beaver Association, an agricultural cooperative, and American-Canadian Beavers Company, Inc., a Utah corporation, alleging that the plaintiffs were sold their investment contracts involving live, breeding beaver as a result of certain material misrepresentations and omissions upon which the plaintiffs relied.

Plaintiffs allege that by virtue of the individual defendants' control of the Association, and the direction of the said Association, the individual appellants were liable to plaintiffs for having violated Rule 10B–5.

The trial court made findings of fact and conclusions of law and entered judgment holding that the Beaver contracts were investment contracts as defined by Section 3(a) (10) of the Securities and Exchange Act of 1934, and that material misrepresentations and omissions of fact were made in the sale of these securities to plaintiffs.

Defendants Mark Weaver, Ted Weaver, Van Weaver, Elizabeth Weaver Milligan, Jerry Milligan and Sally Weaver were judged to be liable to plaintiff Harold Kemmerer in the amount of $50,675.00 and to plaintiff Gordon Greg-

ory in the amount of $9,300.00. Defendants Mark Weaver and Lawrence Milligan were judged to be liable to plaintiff Robert Albrecht in the amount of $12,200.00.

The record herein is voluminous consisting of five volumes of transcript plus many exhibits. A summary discloses that the Weavers' Beaver Association was organized as a Utah non-profit agricultural cooperative in 1957. Until late in 1964, the Weaver family had a majority of the directors of the Association. The Court dismissed this Association for lack of jurisdiction in that service of process had never been obtained. The trial court also found that defendant, American-Canadian Beaver Co., Inc., had no liability to plaintiffs and held that the individual appellants were the controlling persons of Weavers' Beaver Association.

The investment contracts were for the sale, care and resale of domestic breeding beaver which were claimed to have a large value in the fur industry. Defendants sold these beaver to plaintiffs and others for prices up to $1200 each, representing that they were seventh generation domestic beaver, and further, representing that there existed a ready market for the resale of these animals.

Pursuant to the terms of the agreement, defendants were to have complete control in the care and feeding of the beaver, and were to select an appropriate market for resale. Due to the hoped for reproduction of the beaver, a 100% return within one year was guaranteed.

Instead of selling exclusively domestic beaver, defendants actually sold to plaintiffs and others, certain wild-trapped beaver which ranged in actual market value of from $20 to $75 each. Furthermore, there was no immediate market for resale as had been promised by de-

fendants. Many purchasers were placed upon a one-year waiting list.

The appellants claim that there are four principal issues on this appeal: 1) Can defendants be charged with liability as controlling persons? 2) Is Lawrence Milligan a controlling person? 3) Is the sale of live beaver under the contracts a "security" under the Act of 1934? and 4) Were there material misrepresentations? Appellants contend that all of these questions should be answered in the negative. We disagree on all four points.

■ Defendants' first argument is that since Weavers' Beaver Association (Association) was found "not liable", the individual defendants should likewise be held not liable due to the wording of 15 U.S.C. § 78t(a).[1] In other words, defendants contend that if the agent Association is not liable, then the principal (individual defendants) likewise cannot be liable. We disagree.

The premise of this argument is that there is a finding of "no liability" with respect to the Weavers' Beaver Association. No such finding exists, it appearing instead that the Association was dismissed from the suit for lack of jurisdiction due to a failure to obtain service of process. It further appears that the reason for the failure to obtain process was that the Association had been dissolved on the initiative of many of the individual defendants in the present suit. On such facts it is evident that 15 U.S.C. § 78t(a) is of no avail to defendants.

■ The plaintiffs argue correctly that there is nothing in the statutes or regulations which prohibits the suing of the principal controlling party or parties under 15 U.S.C. § 78j(b) or Rule 10B-5 if the facts in the case so present themselves. The trial court found such facts

1. "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

were present and permitted the action to continue against the controlling party under Rule 10B-5. We hold that the trial judge correctly held that these individual defendants could be liable as controlling persons.

Appellants' second contention that it was clearly erroneous for the trial court to have found Lawrence Milligan to be a controlling person, is also without merit.[2] The record amply supports such a finding. Although not an officer or director at the time of the events in question, Lawrence Milligan was General Sales Manager of the Association and was shown to have prepared the dissemination of new sales literature through the United States mails. Although Milligan contended at trial that other salesmen of the Association were "independent contractors" he admitted that he told all of these people what to say, what literature to use, and that he had "helped" to put together a film on the Association which was shown to plaintiff Albrecht in this case. Much of this sales literature contained statements found to be material misrepresentations by the District Judge. Finally, we note that Lawrence Milligan is the son-in-law of Mark Weaver and the brother of Jerry Milligan, and was closely associated with the Weaver family. The trial judge, on these facts, could correctly conclude that Lawrence Milligan was a controlling person who was directly or indirectly responsible for the material misstatements and non-disclosures found to have occurred.

We consider the most important issue in this case to be whether the contracts for the sale, care, feeding and ultimate resale of the beaver were investment contracts within the meaning of the Securities and Exchange Act.

This question already has been answered affirmatively in another suit against these same defendants for the same kind of an operation as hereinbefore described, and we agree with the holding and reasoning of that case. Continental Marketing Corporation v. S. E. C., 387 F.2d 466 (10 Cir., 1967). The Court, in *Continental Marketing*, found that such contracts were investment contracts because the role of the investor was to supply capital with the hopes of a favorable return, and that, as such, they fit within the United States Supreme Court's definition of an investment contract in S. E. C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L. Ed. 1244 (1946) as " * * * a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

The Howey court further stated, in language most relevant to the present case, that the concept of an investment contract "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." (328 U.S. at 299, 66 S.Ct. at 1103.)

The investment scheme involved in the present case clearly qualified as an "investment contract" and hence a "security" as those terms have been construed by the United States Supreme Court in *Howey* and in Tcherepnin et al. v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). The whole underlying format of the arrangement was that the purchaser of individual beavers was to put up the money and then "sit back and let nature take its course" or, more precisely, to "let things ride while [his] herd builds up and up and up", hoping ultimately to "sell the herd (or part of it), bank the profits and enjoy long-term capital gains." (Quotations from Sales Literature). The words of the contracts

2. All of the other individual defendants were either officers or directors of the Weavers' Beaver Association, and their status although not their liability as controlling persons is conceded.

and the duties set forth therein clearly contemplate an investment relationship, whereby the individual investors placed their money in the expertise of the defendants who would provide everything to make that investment grow. And, of course, as a practical matter, it would have been physically impossible for the average purchaser of live breeding beaver to take absolute possession of his animals. He would not have had the secret food formula, the special pen design, nor would he have known anything of the sexing and breeding of the beaver, all of which was to be provided by the Association. In short, the "(i)nvestment by members of the public was a profit-making venture in a common enterprise, the success of which was inescapably tied to the efforts of the ranchers and the other defendants and not to the efforts of the investors." Continental Marketing Corp. v. S. E. C., *supra*, 387 F.2d at 470.

■ With respect to appellants' final contention, we conclude that the record overwhelmingly supports the District Judge's conclusion that material misrepresentations occurred. Specifically, the Court found that Mark Weaver was purchasing wild trapped beaver at prices ranging from $20 to $75 each; that between 1950 and 1965 approximately 11,000 such wild beaver were purchased by defendants of which approximately one half were introduced into the herd; that there was no ready resale market for the beaver. These, and other facts, were not disclosed to or known by the plaintiffs in the present case when they purchased their beaver at prices ranging up to $2400 per pair. Nor did the plaintiffs have any way of knowing which beaver were domesticated and which were wild, that fact being known only to the defendants by means of a special tattoo mark which was not revealed until an S.E.C. investigation of this operation began in 1966. We conclude that these and other misrepresentations and nondisclosures were clearly material, for they certainly prevented the present plaintiffs from knowing that the true value of their investment was considerably less than they had bargained for.

The judgment in favor of the plaintiffs is affirmed.

Affirmed.