[No. D004033. Fourth Dist., Div. One. May 18, 1987.]

THOMAS L. COURTNEY et al., Plaintiffs and Appellants, v.
JAMES T. WARING et al., Defendants and Respondents.

DARRELL G. MUSICK et al., Plaintiffs and Appellants, v.
JAMES T. WARING et al., Defendants and Respondents.

LELAND NYMAN, Plaintiff and Appellant, v.
JAMES T. WARING et al., Defendants and Respondents.

REZA TEHRANI et al., Plaintiffs and Appellants, v.
JAMES T. WARING et al., Defendants and Respondents.

**COUNSEL**

Robert M. Brown, Michael K. Brown and Brown & Finney for Plaintiffs and Appellants.

Donald Merkin, Merkin & Hemme, Terrence L. Bingman, Anne Graff Brown and Adams, Duque & Hazeltine for Defendants and Respondents.

## OPINION

**WIENER, J.**—This case involves the misfortunes of a company known as Tools-R-Us (TRU), which at one time franchised a number of retail hardware stores. Plaintiffs are a group of TRU franchisees who suffered financial losses when the company declared bankruptcy in 1980. This appeal concerns their attempts to hold certain corporate insiders and attorneys liable for the damages they incurred.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Stephen J. Watson was the founder of TRU. In 1977, Watson retained defendant James T. Waring, an attorney, for the purpose of incorporating TRU. Waring also arranged for the incorporation of a related entity, Tools, Equipment and Machinery, Inc. (TEAM). The business purpose of TRU was to franchise retail tool stores. The business purpose of TEAM was to wholesale tools to TRU franchisees. TRU was a wholly owned subsidiary of TEAM. At this point in time, Watson was the sole shareholder of TRU and TEAM and served as an officer and director. Waring also served as an officer and director, as well as legal counsel to the corporation.

Waring introduced Watson to defendant George Drykerman. Through a series of financing arrangements with related business entities controlled by him, Drykerman came to control the daily corporate activities of TRU and TEAM and was responsible for all major corporate decisions.

Defendant Grant Emery invested significant sums in the corporations and became a corporate officer. The remaining defendants (hereafter referred to as the "attorney defendants") are lawyers or law corporations which are or were professionally related to Waring and performed legal services for the corporation.

Plaintiffs allege they each purchased a TRU franchise relying on, among other things, a franchise prospectus prepared by Waring and the attorney

---

[1]As always in evaluating a demurrer on appeal, we state the facts in a light most favorable to the plaintiff, assuming as true all properly pleaded allegations in the complaint. *(Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330].)

defendants which contained material misrepresentations. In particular, plaintiffs allege they were falsely informed regarding: (1) the experience, background and relationship of the persons working for, affiliated with and controlling TRU/TEAM; (2) the past business success and reasonable future prospects of TRU franchisees; (3) TRU/TEAM's present financial difficulties and its overall financial soundness; (4) TRU/TEAM's ability to provide goods and services to franchisees; and (5) the availability to TRU franchisees of financial assistance from the Small Business Administration.

These allegations gave rise to two causes of action relevant to this appeal. Against Waring, Drykerman and Emery, plaintiffs asserted a violation of the California Franchise Investment Law (Corp. Code, § 31000 et seq.). Against Waring and the attorney defendants, plaintiffs attempted to state a claim for legal malpractice, i.e., negligence. After several amended complaints, defendants' demurrers as to these causes of action were sustained without leave to amend. The case proceeded as to other causes of action involving these and other defendants.

While this action was pending in the superior court, the trustee in bankruptcy for TRU/TEAM brought an adversary proceeding in federal court (Goldberg v. Waring, No. 85-628-T) against various persons including all defendants in this appeal asserting, among others, claims similar to those raised by the plaintiffs here. The trustee sought and received court approval to employ as special counsel in that action the same attorneys who were representing plaintiffs in this case. Because they were familiar with the underlying facts and had already conducted substantial discovery, the trustee concluded that employing the same attorneys would avoid considerable expense. As part of the arrangement, plaintiffs here agreed to waive any conflict arising out of the simultaneous representation of the trustee of the debtors in bankruptcy, against whom these same plaintiffs had filed creditor claims.[2]

Goldberg v. Waring, *supra,* was tried in the United States District Court for the Southern District of California. At the close of the trustee's case, Judge Turrentine granted a defense motion for directed verdict pursuant to Federal Rules of Civil Procedure, rule 41(b)(28 U.S.C.). The detailed findings of fact made by Judge Turrentine included conclusions that Drykerman never controlled or dominated the corporation and that all of Waring's work for TRU/TEAM as an officer, director and legal counsel complied with the appropriate standards of care and loyalty.

---

[2]Plaintiffs also agreed to limit the amount of their claims against TRU/TEAM to out-of-pocket expenses.

Following the judgment in federal court, from which there was apparently no appeal, defendants in this action moved to amend their answer to raise the bar of collateral estoppel. The motion was denied. Thereafter, settlements and voluntary dismissals disposed of all other defendants, and plaintiffs then elected to dismiss the remaining causes of action against these defendants and appeal the decision sustaining the demurrer on the Franchise Investment Law and legal malpractice claims.

DISCUSSION

*Franchise Investment Law Claims*

Plaintiffs' statutory claims against Waring, Drykerman and Emery are based on Corporations Code section 31201[3] which provides in relevant part as follows: "It is unlawful for any person to offer or sell a franchise in this state by means of any written or oral communication . . . which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

Section 31301 specifically provides for civil liability for persons violating section 31201. Defendants argue they cannot be liable for a violation of section 31201 because they did not "offer or sell" a franchise to plaintiffs.

The Franchise Investment Law is modeled on the federal Securities Act of 1933 (1933 Act) (15 U.S.C. § 77a et seq.). (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 597 [183 Cal.Rptr. 360, 645 P.2d 1192], revd. on other grounds *sub nom. Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852].) Section 31201 itself tracks closely the language of section 12(2) of the 1933 Act.[4] (*Id.* at p. 597, fn. 8.) Looking to federal precedent, we find that the "offers or sells" language of section 12(2) has not been restrictively interpreted. "The meaning of 'seller' for purposes of § 12 has been judicially expanded beyond the person who transfers title to include 'participants' in the transaction." (*Admiralty Fund* v. *Jones* (9th Cir. 1982) 677 F.2d 1289, 1294; see also *Cady* v. *Murphy* (1st Cir. 1940) 113 F.2d 988, 990; *Katz* v. *Amos Treat & Co.* (2d Cir. 1969) 411 F.2d 1046, 1052-1053;

---

[3]All statutory references are to the Corporations Code unless otherwise indicated.

[4]Section 12 of the 1933 Act (15 U.S.C. § 77*l*) provides in pertinent part: "Any person who—

". . . . . . . . . . . . . . . . .

"(2) offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . shall be liable to the person purchasing such security from him, . . ."

*Hill York Corp* . v. *American Internat'l Franchises, Inc.* (5th Cir. 1971) 448 F.2d 680, 692-693; *Junker* v. *Crory* (5th Cir. 1981) 650 F.2d 1349, 1360; *In re Caesars Palace Securities Litigation* (S.D.N.Y. 1973) 360 F.Supp. 366, 378-383.)

Defendants respond by pointing to section 25401, a part of the Corporate Securities Law which, like section 31201, is patterned after section 12(2) of the 1933 Act.[5] Without extensive discussion, the Ninth Circuit Court of Appeals has interpreted section 25401 literally, holding that only the actual "seller" can be liable.[6] (*Admiralty Fund* v. *Jones, supra,* 677 F.2d at p. 1296; accord *In re Diasonics Securities Litigation* (N.D.Cal. 1984) 599 F.Supp. 447, 459.) Defendants persuasively argue that sections 25401 and 31201 should be interpreted in a like manner as to this issue. Of course these federal decisions, while entitled to consideration, are in no sense binding on us with respect to the proper interpretation of section 25401.

The issue need not detain us. We assume without deciding that the "offer or sell" language of section 31201 refers solely to the literal seller of the franchise. Even if it does, defendants are properly subject to suit under the secondary liability provisions of section 31302. That section provides for the joint and several liability of, among others, the directors, principal executive officers and controlling persons of the franchise seller to the same extent as the seller.[7] The complaint alleges that each of the defendants falls within one of the statutory categories: Waring as vice president and a director; Drykerman as a controlling person; and Emery as a vice president. While

[5]Section 25401 provides: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

[6]Marsh and Volk in their treatise on the California securities laws agree with this conclusion. They distinguish the liberal interpretation afforded section 12(2) of the 1933 Act by noting, "[T]here is no occasion or justification for a court to impose liability upon anyone other than the actual vendor of the security under the basic Sections 25401 and 25501, because the statute itself in California has spelled out the extent to which other persons may also be liable under those sections in Sections 25504, 25504.1 and 25504.2." (1 Marsh & Volk, Practice Under the Cal. Securities Laws (rev. ed. 1986) § 14.03[4][b], p. 14-21.) Section 25504 is the securities law analog of section 31302 in the Franchise Investment Law, discussed *post.*

[7]Section 31302 reads as follows: "Every person who directly or indirectly controls a person liable under Section 31300 or 31301, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

factual questions may arise as to the defendants' status, the complaint adequately pleads a cause of action under section 31302.

Focusing on the language of the statute making secondary parties liable "with and to the same extent as" the franchise seller, defendants argue they cannot be subjected to liability under section 31302 because TRU, the literal seller, has never been held liable to plaintiffs and, in fact, was voluntarily dismissed from the lawsuit. Federal courts confronted with similar arguments in the context of interpreting analogous sections of the Securities Act of 1933 and the Securities Exchange Act of 1934[8] have consistently rejected them. In *Demarco* v. *Edens* (2d Cir. 1968) 390 F.2d 836, plaintiffs brought a 1933 Act suit against two officers of the Armstrong & Co. brokerage firm which sold stock to plaintiffs but failed to remit the proceeds of the purchase to the issuing corporation. As a result, plaintiffs never received their stock certificates. The court explained, "Although Armstrong was not a defendant in these actions, it is clear that Armstrong was a 'seller' of the securities within the Section 12 meaning of that term. [Citations.] Hence defendants Edens and Lasher, officers of Armstrong, were implicated as persons controlling Armstrong within the meaning of Section 15." *(Id.* at p. 840.) Similarly in *Kemmerer* v. *Weaver* (7th Cir. 1971) 445 F.2d 76, 78, the court rejected defendants' contention that dismissal of the primary violator, an agricultural cooperative, from the suit due to a failure to obtain service of process did not require dismissal of controlling person allegations against certain individuals who were directors of the cooperative.

The court in *Briggs* v. *Sterner* (S.D.Iowa 1981) 529 F.Supp. 1155 discussed this issue in a context remarkably similar to the present one: "Sections 15 and 20(a) mandate a finding of the controlled person's transaction of a sale of securities in contravention of the applicable securities law as a necessary prerequisite to imputation of liability therefor to the controlling person. Under circumstances such as those herein, however, where the primary offender is insolvent or otherwise unavailable, the courts have proceeded to adjudicate the underlying liability of that offender regardless of its presence as a party-defendant. . . . None of the cases cited by defendants support the proposition that the primary violator's presence is a condition precedent to maintenance of an action under derivative liability provisions of federal or analogous state securities statutes.

---

[8]Both section 15 of the 1933 Act (15 U.S.C. § 77o) and section 20(a) of the 1934 Act (15 U.S.C. § 78t) impose liability on persons who control a primary violator. The language of the two sections is similar and they have been interpreted identically by the federal courts. (See *Pharo* v. *Smith* (5th Cir. 1980) 621 F.2d 656, 673.) Section 31302 was modeled on these two federal statutes except that the class of persons liable was expanded beyond the limited concept of a controlling person to include a variety of persons with relationships or connections to the franchise seller.

"In keeping with the broad remedial purpose of the securities laws, whether state or federal, the Court will not permit officers and directors of a bankrupt corporation whose actions are alleged to have contributed to that condition to avoid the possible imposition of liability under such laws by asserting the lack of a prior adjudication against the controlled person as a basis for dismissal. [Citations.] The primary liability of the controlled person is merely a required element of proof before a controlling person can be held vicariously liable." *(Id.* at p. 1171.) (See also *Securities and Exchange Com'n v. Savoy Industries* (D.C.Cir. 1978) 190 App.D.C. 252 [587 F.2d 1149, 1170, fn. 47] ("It is established that the plaintiff need not proceed against the principal perpetrator, nor need the principal perpetrator be identified in the complaint"); 5 Jacobs, Litigation and Practice Under Rule 10b-5 (2d ed., 1986 rev.) § 40.04, p. 2-370 ("[T]he plaintiff need not successfully sue the controlled entity to prevail against the controlling person, so long as the plaintiff proves the controlled person violated 10b-5.").)[9]

■ Consistent with this well-reasoned federal authority, we hold that the imposition of secondary liability under section 31201 does not require that the plaintiff successfully sue the franchise seller but only that he establish in his action against the secondary defendant that liability *could have been* imposed on the seller under sections 31201 and 31301. (See *Paul F. Newton & Co.* v. *Texas Commerce* (5th Cir. 1980) 630 F.2d 1111, 1119.) Were the rule otherwise, it would be virtually impossible to settle a case with a franchise seller because the plaintiff's voluntary dismissal of the action as part of the settlement would totally insulate any secondary parties from liability. Accordingly, the demurrer as to plaintiffs' Franchise Investment Law claims was improperly sustained.

---

[9]Defendants rely principally on *Payne* v. *Fidelity Homes of America, Inc.* (W.D. Ky. 1977) 437 F.Supp. 656, in which a plaintiff sued the seller of a security under section 12(2) of the 1933 Act and joined additional defendants alleged to be "controlling persons" of the seller under section 15. After it dismissed the claim against the seller as being barred by the statute of limitations, the court similarly dismissed the controlling person claims, noting that section 15 liability is limited "to those who aid or control persons liable under [section 12]." (437 F.Supp. at p. 658.) We do not read this cryptic reference as being inconsistent with the great weight of federal authority on the issue. The result in *Payne* is very easy to understand. If the complaint was time-barred as against the seller, it was necessarily time-barred against all secondary parties under section 13 of the 1933 Act (15 U.S.C. § 77m), which provides an absolute three-year statute of limitations running from the date of the transaction in question. In any event, to the extent *Payne* suggests a more restrictive interpretation of section 15 of the 1933 Act, it is at odds with the decisions of numerous other federal courts and we decline to follow it.

*Legal Malpractice Claims*

The viability of plaintiffs' negligence claims against Waring and the attorney defendants depends on the interplay of two cases. The general parameters for a legal malpractice claim in California are set by the Supreme Court's decision in *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], in which the court held that an attorney advising a client owes no duty to third persons affected by that advice "in the absence of any showing that the legal advice was foreseeably transmitted to or relied upon by plaintiffs or that plaintiffs were intended beneficiaries of a transaction to which the advice pertained." *(Id.* at p. 339.) *Goodman* involved a defendant attorney who erroneously informed certain corporate officer clients they could sell stock without jeopardizing the corporation's exemption from the registration requirements of the federal securities laws. Plaintiffs purchased the stock from the officers and were damaged when the exemption was suspended, resulting in a loss in the stock's value. The court concluded plaintiffs did not state a negligence cause of action against the attorney because there was no allegation the attorney's opinion was ever communicated to plaintiffs. In doing so, it specifically distinguished another legal malpractice case, *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901]. (See 18 Cal.3d at p. 343, fn. 4.)

In *Roberts,* a law firm prepared an opinion letter for a client knowing that the letter was to be shown to a prospective lender to induce the lender to make a loan. The letter expressed the law firm's professional opinion that the client was a general partnership but failed to disclose that a significant number of the supposed general partners believed the entity was either a corporation or limited partnership as to which their liability was limited. When the entity defaulted on the loan, the lender sued the law firm alleging, among other things, negligent misrepresentation. The court concluded a cause of action for negligence was properly stated: "The defendants' opinion concerning the status of the partners was rendered for the purpose of influencing plaintiff's conduct, and harm to him was clearly foreseeable. We have no difficulty, therefore, in determining that the issuance of a legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care, or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." *(Id.* at p. 111.)

■ We similarly have no difficulty in concluding that the present case presents a *Roberts* rather than *Goodman*-type situation. Plaintiffs allege that defendants negligently prepared a franchise prospectus which failed to disclose material information known to defendants but unknown to plain-

tiffs. Defendants knew that the prospectus would be shown to prospective franchisees and that the information contained in it would be used to induce these persons to purchase TRU franchises. In simple terms, defendants are alleged to have prepared a false and/or misleading document, the purpose of which was to influence plaintiffs' conduct. It is the attorney's knowledge regarding the purpose of his work product which *Roberts* and *Goodman* both hold establishes a duty to those whose conduct has been influenced. The present complaint adequately pleads a breach of that duty, and defendants' demurrer was therefore improperly sustained.[10]

*Applicability of Collateral Estoppel*

Defendants argue that even if the complaint theoretically states a valid cause of action against them, the demurrer was properly sustained because, as a matter of law, plaintiffs are collaterally estopped to plead the necessary allegations of the complaint by the effect of the federal court judgment in Goldberg v. Waring. (*Ante,* pp. 1438-1439.) Plaintiffs respond that because the Goldberg action was brought by the bankruptcy trustee on behalf of TRU, they were never afforded their "day in court" consistent with due process principles.

California Supreme Court decisions establish that ". . . a party will be collaterally estopped from relitigating an issue only if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* (2) there was a final judgment on the merits; *and* (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098], italics in original; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813[122 P.2d 892].)

---

[10]The attorney defendants also argue that the legal malpractice claims against them are barred by the one-year statute of limitations provided for by Code of Civil Procedure section 340.6. The attorney defendants were first named in the second amended complaint filed in October 1981. Beginning with the second amended complaint, plaintiffs have alleged they were unaware of the misrepresentations contained in the prospectus and related materials prepared by the attorney defendants until the depositions of Waring and another key figure, Hugo Mahler, in January 1981. The attorney defendants respond that plaintiff's initial complaint filed in October 1980 makes clear plaintiffs were aware of the facts which gave rise to the malpractice claims by at least September of 1980.

The misrepresentations alleged in plaintiffs' first complaint are limited and nonspecific. The allegations do not focus on the contents of the prospectus. It is exceedingly plausible that although plaintiffs recognized in September 1980 that they had been taken, they reasonably failed to suspect that professional negligence contributed to the fiasco. (See e.g., *Mosesian* v. *Peat, Marwick, Mitchell & Co.* (9th Cir. 1984) 727 F.2d 873, 877-879.) The question of when plaintiffs reasonably should have suspected attorney negligence is a factual issue not subject to resolution on demurrer. *(Ibid.)*

Plaintiffs do not dispute that the judgment in Goldberg v. Waring was a final judgment on the merits. Although as to the first predicate, they do assert that issues would remain to be tried even if collateral estoppel applied, we are unable to find any factual issue not resolved in the Goldberg action which, if resolved in favor of plaintiffs, would entitle them to judgment. As to the third predicate, however, we conclude that these franchisee plaintiffs are not "in privity" with TRU's bankruptcy trustee such that the collateral estoppel doctrine may be constitutionally applied to bar their claims.

In *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at page 875, the Supreme Court readily admitted that "[p]rivity is a concept not readily susceptible of uniform definition. Traditionally it has been held to refer to an interest in the subject matter of litigation acquired after rendition of the judgment through or under one of the parties, as by inheritance, succession or purchase. *(Bernhard, supra,* 19 Cal.2d at p. 811.) The concept has also been expanded to refer to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel [citations].

"Notwithstanding expanded notions of privity, collateral estoppel may be applied only if due process requirements are satisfied. [Citations.] In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." As to this latter and somewhat nebulous "reasonable expectation" requirement, the *Clemmer* court cited the Court of Appeal decision in *Lynch* v. *Glass (*1975) 44 Cal.App.3d 943 [119 Cal.Rptr. 139] which gives some substance to the concept: "A nonparty should reasonably be expected to be bound if he had in reality contested the prior action even if he did not make a formal appearance. Thus, collateral estoppel has been applied against nonparties who had a proprietary or financial interest in and control of, a prior action. [Citations.] [¶] Collateral estoppel has been given effect in a second category of cases against one who did not actually appear in the prior action. These cases involve situations where the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for a nonparty." *(Id.* at p. 949.)

In the present case, the extent to which plaintiffs had an identity of interest with the bankruptcy trustee is not totally clear. Certainly the

trustee had an interest in succeeding in his prosecution consistent with his obligation to maximize the assets of the debtor. One can only speculate, however, on financial or other considerations unique to his position which may have constrained the prosecution or influenced tactical decisions.

As to the "reasonable expectation" requirement, the pleaded facts and facts of which we may take judicial notice (see Code Civ. Proc., § 430.30) do not establish that plaintiffs in any way *controlled* the trustee's litigation.[11] Implicitly recognizing this deficiency, defendants focus on their suggestion that the trustee *represented* plaintiffs as creditors of the estate, thus binding plaintiffs to the result. In this regard, defendants point to documents from the Goldberg v. Waring action indicating that the trustee sought to claim, as an element of damage on behalf of the corporation, the amounts of the creditor claims filed by these plaintiffs. As defendants accurately point out, the trustee in essence was seeking indemnity from these defendants for any sums TRU/TEAM might be forced to pay to the franchisees.

The fact that the trustee was *seeking* to represent the claims of the franchisees, however, does not establish that he was legitimately acting in a representative capacity. As we have noted, there is no evidence that plaintiffs exercised any control over the trustee. The trustee's decision to seek recovery of the franchisee's claims may have been a choice with which plaintiffs would not have agreed, especially had they known that a negative judgment would collaterally estop their state court action.

It would be a different case had there been a judicial determination that the trustee was entitled to recover the franchisee claims as an element of damage in its action against the defendants. We were concerned because documents filed by defendants in the superior court suggested Judge Turrentine had ruled that the franchisee claims were a proper element of damage for the trustee. In fact, however, Judge Turrentine was very skeptical of the trustee's assertion but never had reason to decide the damage issue since his ruling in favor of defendants on liability mooted the point. Had Judge Turrentine ruled at the outset of the case that the trustee could not assert the claims of the franchisees as an element of damage, there would be no question but that collateral estoppel would not apply because the trustee was not acting in a representative capacity.

Proper application of collateral estoppel requires that the issue as to which the earlier losing party is to be estopped from relitigating must have been

---

[11]In any event, to the extent defendants seek to rely on the "control" factor, it necessarily involves factual issues not subject to resolution on demurrer.

actually litigated and that determination of the issue must have been necessary to the judgment. (E.g., *Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 428-430 [95 Cal.Rptr. 860].) Issues raised but not necessarily determined are not proper subjects for collateral estoppel. By analogy here, where application of collateral estoppel turns on whether plaintiffs were properly represented by the trustee, the trustee's decision to assert a claim cannot be determinative. At a minimum, there must have been a judicial determination that the assertion was properly made. To conclude otherwise would beg the ultimate question, holding plaintiffs bound by the trustee's assertion before determining whether the trustee was representing plaintiffs when he made the assertion.

The circumstances of *Lynch* v. *Glass, supra,* 44 Cal.App.3d 943, while not factually identical, demonstrate that a plaintiff's knowledge of and involvement in prior litigation combined with an identity of interest with a party to that litigation is nonetheless insufficient to support a determination that collateral estoppel applies. Defendants in *Lynch* owned a piece of property across which ran a private road which provided the only access to an area several persons and corporations sought to develop. In a prior action, two corporations failed to establish their claim that defendants' private road was subject to a public easement. Plaintiffs in *Lynch,* individual owners of nearby property, then brought an action asserting the identical claim to a public easement. In rejecting defendants' attempt to invoke collateral estoppel, the court cited many of the factors present in this case: "Appellants were apparently identified in interest with the two corporations . . . with a view to developing their respective properties and establishing public access thereto. Appellants' side of the underlying dispute was urged by the corporations at trial and on appeal. [Citation.] But it cannot be said that appellants should reasonably have expected to be bound by the prior adjudication. Although appellants were fully aware of the prior litigation, the appearance of one of them as a witness gave them no power to control any aspect of the case. [Citations.] Moreover, appellants did not stand in a relationship with the two corporations which would put them on reasonable notice that they avoided the prior proceedings at their peril." (44 Cal.App.3d at p. 949.) We similarly conclude that plaintiffs here could not reasonably have expected to be bound by a result adverse to the bankruptcy trustee in Goldberg v. Waring.

It is not without some visceral concerns that we reach this conclusion. The fact that the same attorneys who represented the trustee also represented the plaintiffs is troubling. As a practical matter, this dual representation probably indicates that the plaintiffs' interests closely coincided with the trustee, at least at the beginning of the case. But the identity of attorneys should not determine the result here. Had the trustee been separately represented, plain-

tiffs' action would not be barred. We cannot presume that had a divergence developed in the interests of the trustee and plaintiffs during the prosecution of the trustee's action, the attorney would have protected the franchisees' interests to the detriment of the trustee's.

We sympathize with defendants' position. To the extent plaintiffs' claims are without merit—as Judge Turrentine's findings would appear to indicate —defendants will be forced to the time and expense of demonstrating that fact once again. But under our system of justice, plaintiffs are entitled to more than the bankruptcy trustee's day in court; they are entitled to their *own* day in court. We are not permitted to allow our feelings of comity or concerns regarding judicial economy to subvert this fundamental due process principle.

DISPOSITION

Judgment reversed.

Kremer, P. J., and Work, J., concurred.

Respondents' petitions for review by the Supreme Court were denied July 30, 1987. Mosk, J., was of the opinion that the petitions should be granted.