Lewis H. LEVINE, et al., Plaintiffs,

v.

DIAMANTHUSET, INC., a California corporation, et al., Defendants.

No. C–87–5663 MHP.

United States District Court,
N.D. California.

March 29, 1989.

& Heimann, San Francisco, Cal., for plaintiffs.

Lennart Martinson, Talent Television, W. Los Angeles, Cal., in pro. per.

Samuel R. Miller, Morrison & Foerster, San Francisco, Cal., for Bank of Delaware.

James F. Kirkham, Pillsbury, Madison & Sutro, San Francisco, Cal., for Wilmington Trust Co.

Michael D. Stokes, Broad, Schultz, Larson, Wineberg, San Francisco, Cal., for Sec. Pacific Nat. Bank.

Darryl M. Woo and Roger W. Sleight, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for Smith & Holland.

Michael C. Doughton, Heron, Burchette, Ruckert & Rothwell, Sacramento, Cal., for Glassman & Browning, Inc.

Cameron Stout, Samuel A. Keesal, Jr. and Ben Suter, Keesal, Young & Logan, San Francisco, Cal., for Frederic M. Smith.

Thomas N. Luebke, Prestininzi & Luebke, Torrance, Cal., for Ed Figlioli.

Larry D. Langley, Law Offices of Langley & Haigh, Palo Alto, Cal., for other defendants.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiff Levine and others bring this class action on behalf of themselves and other persons who invested in a California corporation now known as Diamanthuset, Inc. (formerly known as Investia, Inc.), alleging violations of securities laws, the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961 et seq., and various state laws. Defendants are the Diamanthuset corporation and several of its officers; the Security Pacific Bank, allegedly involved with the offer and sale of Diamanthuset's securities; the Bank of Delaware and Wilmington Trust Company (hereinafter "Trust Company Defendants"), which allegedly acted as trustees for Diamanthuset; Frederic M. Smith, counsel to Diamanthuset; and the law firms with which Smith was affiliated

Robert L. Lieff, Elizabeth Joan Cabraser and Richard M. Heimann, Lieff, Cabraser

(hereinafter "Law Firm Defendants"), namely, Glassman & Browning and Smith & Holland.

The original complaint was filed on November 9, 1987 and the first amended complaint filed on May 12, 1988 (after an earlier version was filed on May 5, 1988). The case now comes before the court on motions to dismiss and other motions by various defendants, and plaintiff's motion for preliminary approval of settlement with the Bank of Delaware. Having considered the papers submitted and the arguments of the parties, the court grants several of defendants' motions to dismiss certain counts, denies others, and grants plaintiffs leave to amend their complaint as to certain claims. Plaintiffs' motion for preliminary approval of a settlement with defendant Bank of Delaware is denied without prejudice.

BACKGROUND

Plaintiffs allege that between June 1979 and January 1987, they invested money with Investia for an investment scheme based on the sale of diamonds. According to the plaintiffs, Investia offered an investment contract linking a sale of diamonds with a commitment from Investia to obtain a buyer for the diamonds at a later date. Plaintiffs allege that Investia promised investors a virtually risk-free, high return investment.

The Investia securities were advertised in the media and marketed through offices in Beverly Hills, Sacramento, and San Francisco. According to plaintiffs, each diamond was packaged in a microcassette and posted to investors' accounts. Periodically, Investia issued "notices of appreciation" to investors, informing them that the diamonds had increased in value. Investia also made periodic interest payments to investors and issued percentage increases in the value of the investments at maturity. Plaintiffs charge that Investia Corporation actually created an illegal "Ponzi" pyramid scheme that depended on the continual recruitment of new investors.

On or about April 10, 1987, the Attorney General of the State of California and the California Department of Corporations initiated a civil action against the Diamanthuset Corporation, certain officers and other corporate entities, *People v. Diamanthuset, Inc.*, No. C 643-673 in the Superior Court of the State of California for the County of Los Angeles. On April 10, 1987, that court issued a permanent injunction based on a stipulation by the parties. The permanent injunction restrained the Diamanthuset Corporation and its employees from engaging in the sale of securities in the form of diamond investment contracts, and provided for return of diamonds and monies to investors.

Plaintiffs deny that they knew of or participated in any wrongdoing in connection with the sale of securities by Investia. They further allege that the court-ordered liquidated recovery of Investia-held diamonds and reserve accounts will not fully compensate them for their investments.

In their first amended complaint, plaintiffs style their suit as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)–(4) and 23(b)(1) or (b)(3). Plaintiffs state fourteen separate claims for relief against various defendants: [1]

1) failure to register investment securities as required by Section 5 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77e, and the sale of such as prohibited by section 12(1) of the 1933 Act, 15 U.S.C. § 77*l* (1), against all defendants except Law Firm Defendants;

2) material false representations and omissions of fact in violation of section 12(2) of the 1933 Act, 15 U.S.C. § 77*l* (2) and the inducement of plaintiffs to buy such securities, against all defendants except Law Firm Defendants;

3) violations of section 10(b) and rule 10b–5 thereunder of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j, against all defendants;

---

**1.** By stipulation dated August 1, 1988, plaintiffs agreed to drop the fourth, fifth, eighth and thir- teenth claims for relief against defendant Smith.

4) violations of RICO, 18 U.S.C. § 1961 et seq., against all defendants except Smith and Law Firm Defendants;

5) violations of California Corporations Code §§ 25110 and 25503, regulating the qualification of securities, against all defendants except Smith and Law Firm Defendants;

6) violations of California Corporations Code §§ 25400 and 25500, prohibiting misrepresentations, against all Defendants except Law Firm Defendants;

7) violations of California Corporations Code § 25401, prohibiting written and oral statements containing misstatements or omissions of fact, against all defendants;

8) fraud and deceit against all defendants except Smith and Law Firm Defendants;

9) negligent misrepresentation against all defendants;

10) breach of fiduciary duty against all defendants;

11) negligence against all defendants;

12) unfair business practices within the meaning of California Business and Professions Code § 17200 et seq., against all defendants except Law Firm Defendants;

13) conspiracy to violate registration, qualification and anti-fraud provisions of federal and state securities laws; and

14) professional negligence (attorney malpractice) against Smith and Law Firm Defendants.

Various defendants have moved separately for dismissal or for a more definite statement. The court will deal with the claims in turn.

LEGAL STANDARD

A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All

material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).[2]

DISCUSSION

I. *Defendant Figlioli's Motion to Join in the Motions of Defendants Security Pacific National Bank and Bank of Delaware*

██ Plaintiffs sued Edward Figlioli in his capacity as Investia's vice-president for marketing, alleging that he was one of the Investia representatives who induced the investments of plaintiff Levine and others. Plaintiffs further contend that Figlioli was a "controlling person" of Investia within the meaning of 15 U.S.C. §§ 77o and 78t.

Figlioli moves to join in the defendant financial institutions' motions to dismiss. However, his posture in this case is clearly distinguishable from theirs. The legal arguments made by the banks are inapplicable to Figlioli. He has made no effort to show how their fact-based arguments apply to him. Defendant Figlioli's attempted joinder is a futile effort, particularly in regard to section 10(b) and Rule 10b–5 claims, and his motion is therefore denied.

II. *Federal Securities Law Claims*

A. The Requirement of Showing that Acts Were Committed in Connection with the Offer or Sale of a Security.

Defendants Frederic M. Smith, Bank of Delaware, Wilmington Trust Company and Security Pacific National Bank move to dismiss plaintiffs' sections 12(1) and 12(2) claims. These same defendants and the Law Firm Defendants also attack plain-

---

**2.** Several defendants submitted extensive declarations in support of their motions to dismiss.

Such material will not be considered at this stage of the litigation.

tiffs' section 10(b) and Rule 10b–5 claims. Plaintiffs do not contest the motions for dismissal of section 12(1) claims by Security Pacific Bank, Wilmington Trust Company, Bank of Delaware, and Frederic M. Smith, so those claims are hereby dismissed.

Where violations of the 1933 and 1934 securities laws are alleged, the court must determine initially whether the note or other relevant document is a security. *See* 15 U.S.C. § 77b(1) (section 2(1) of the 1933 Act); *id.* § 78c(a)(10) (section 3(a)(10) of the 1934 Act); *See also Danner v. Himmelfarb*, 858 F.2d 515, 518 (9th Cir.1988) (definitions of security identical under the two acts). Liability attaches under sections 12(1) and 12(2) of the 1933 Act when the alleged activity involves the offer or sale of a security. 15 U.S.C. § 77*l*(1) & (2). Under section 10(b) and Rule 10b–5, the alleged misrepresentation must have been made "in connection with" the purchase or sale of a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975).

With respect to these financial institution defendants, plaintiffs have failed to plead adequately these two of the essential elements of their claims under the securities laws: 1) that a security was at issue; and 2) that the alleged violations occurred in connection with a purchase or sale of a security. The allegations are especially deficient regarding the so-called Trust Company Defendants.

### 1. *Trust Company Defendants.*

■ Beginning in 1982, the Bank of Delaware began serving as a depository for Investia diamonds. In December 1984, Wilmington Trust Company became a depository. Plaintiffs state that from August 1983 until the end of Investia's activities, the Bank of Delaware sent investors written confirmations of deposits received from Diamanthuset. Wilmington Trust Company allegedly performed the same role during the relevant period.

The court need not rely solely upon plaintiffs' characterization of the confirmations as alleged in the complaint. Plaintiffs have incorporated certain documents into their pleadings by appending them to the first amended complaint. These documents may be considered on this motion to dismiss and, if at variance with plaintiffs' characterization in the complaint, the documents control. Plaintiffs cannot bring documents within the meaning of 15 U.S.C. § 77b(10)(a) simply by denominating them as written confirmations. Because the term "written confirmation" may be misleading and is not used in the confirmation letters, the court will refer to the letters as confirmations of deposit or confirmations.

Plaintiffs contend that these confirmations of deposit constituted a security or a prospectus within the meaning of the security laws. This argument is untenable, even if the pleadings are construed generously. The Trust Company Defendants' confirmations merely reported the insured or insurable value that was declared by Investia. Applying the "economic realities" approach endorsed by the Supreme Court and the Ninth Circuit, *Danner v. Himmelfarb*, 858 F.2d 515, 518 (9th Cir. 1988), the court finds that these confirmations did not act as securities.

Three elements must be shown to establish that a document represents an investment contract: "1) an investment of money, in 2) a common enterprise and 3) an expectation of profits from the managerial efforts of others." *Danner*, 858 F.2d at 518 (relying upon *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946)). Plaintiffs fail to meet this test. Plaintiffs did not invest money with the Trust Company Defendants, nor did they expect profits to be made from the Trust Company Defendants' activities, "in the sense of either capital appreciation or a share of the earnings from a business venture formed with the borrowed capital." *Danner*, 858 F.2d at 520. For purposes of securities law, the investment was made in connection with plaintiffs' original or subsequent purchases from Investia. Therefore, the separate contractual arrangements between Investia and the Trust Company Defendants do not involve an actual investment or a promise

or profit independent of the original transaction.

The confirmation likewise fails to qualify as a prospectus. The confirmation is a post-investment communication. It has nothing to do with the offer for sale or confirmation of the sale of a security. It merely confirms the bank's receipt of a package "said to contain diamonds" of a "declared insurable value." *See* Ex. H to First Amended Complaint (sample confirmation of deposit). This statement is a far cry from a prospectus as defined in section 2(10) of the 1933 Act, 15 U.S.C. § 77b(10). Plaintiffs' claims for violations of section 12(2), section 10(b) and Rule 10b–5 against defendants Wilmington Trust Company and the Bank of Delaware are therefore dismissed.

### 2. *Security Pacific National Bank.*

■ Before October 1984, Investia maintained an individual reserve account at Security Pacific Bank for each investor for which Investia was the signatory. In October 1984, Investia and Security Pacific Bank set up a single Security Pacific account for all Investia accounts under the terms of a Custodial Agreement, Ex. T to the May 5, 1988 Complaint. The Custodial Agreement limited Security Pacific Bank's role to distributing funds and reinvesting income at the direction of American Investia. The Reserve Account at Security Pacific National Bank thus served as a checking account for Investia.

According to plaintiffs, Investia represented to investors that the appreciation of the diamonds was ensured by deposits of 25% of their investment into a trust fund at Security Pacific Bank. Investia issued a "Client Reserve Certificate" to each investor, purporting to provide the investor with funds from the Reserve Account under specified circumstances. *See* Plaintiffs' Exhibit J to First Amended Complaint. The Client Reserve Certificate stated that in the event of Investia's insolvency or bankruptcy, the funds would be disbursed by Security Pacific Bank at the direction of an Investia officer. *Id.*

According to plaintiffs, this Client Reserve Certificate created at least the ap-pearance of a trustee relationship between investors and the Security Pacific Bank. They note that in December 1985, the Security Pacific Bank and Investia considered, but rejected, modifications to the Custodial Agreement to conform to the language of the Client Reserve Certificate. Additionally, plaintiffs allege that various actions taken by Security Pacific Bank and its officers reinforced the impression that Security Pacific was acting as a trustee for investors.

However, the Client Reserve Certificate was issued by Investia, not Security Pacific. Again applying the "economic realities" approach, the court finds that the Client Reserve Certificate is not a security. Plaintiffs invested the money with Investia, not the Bank. Any "guaranteed appreciation" anticipated by plaintiffs was not derived from any Bank activities, or any relationship between the Bank and investors, but from Investia's purported activities. A mere trustee account or trustee relationship ordinarily does not constitute an investment contract absent additional terms. Terms which would show an independent investment and a promise of profit are not present in this relationship. The Bank's titular inclusion in a Client Reserve Certificate does not establish that the Bank engaged in the purchase or sale of securities activity.

Nor can the Client Reserve Certificate be considered a prospectus within the meaning of the federal securities laws. The certificate merely confirmed the fact that Investia had deposited its funds with the Bank; it was not a confirmation of sale as envisaged by section 2(10)(a). Accordingly, the claims regarding alleged violations by the Security Pacific National Bank of section 12(2) of the 1933 Act, and of section 10(b) and Rule 10b–5 of the 1934 Act are dismissed.

### B. Sufficiency of the pleadings under section 12(2) against defendant Smith.

■ In *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Supreme Court held that liability for "sellers" under section 12(1) extends only to

those persons who offer securities or those who "successfully solicit[ ] the purchase, motivated at least in part by a desire to serve [their] own financial interests or those of the securities owner." 108 S.Ct. at 2079. The Court thus rejected the "substantial factor" test previously advanced in the Ninth Circuit and other circuits. *Id.* at 2082. In narrowly reading this section, the Court commented that the "substantial factor" test

> might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) strict liability for rescission. The buyer does not, in any meaningful sense, 'purchas[e] the security from' such a person.

108 S.Ct. at 2081. This court has held that the definition of a "seller" is the same under sections 12(1) and 12(2) of the 1933 Act. *See, e.g., In re Fortune Systems Securities Litigation,* 604 F.Supp. 150, 161 n. 23 (N.D.Cal.1984); *see also Pinter,* 108 S.Ct. at 2076 n. 20 (most courts and commentators have held same definition of "seller" applicable to sections 12(1) and 12(2)).

Smith's role is difficult to assess from the pleadings. Although plaintiffs assert that Smith participated in the drafting of advertising and offering materials, they do not allege that he solicited or sold securities to investors. Plaintiffs therefore are given leave to amend their complaint to allege with specificity Smith's role in the offer and sale of securities, if they can allege facts that would bring Smith within the *Pinter* definition. Should a more definite statement not be forthcoming within thirty (30) days of the date of this order, the section 12(2) claim against Smith will be dismissed.

### C. Statute of limitations under section 12(2).

Any action regarding section 12(2) claims must be initiated within one year from the date of discovery *and* no later than three years from the date of sale. 15 U.S.C. § 77m. *See Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 770 (9th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982) (discussing one year statute of limitations). Since this court has dismissed section 12(2) claims against defendants Security Pacific National Bank, Wilmington Trust Company, and Bank of Delaware, it is unnecessary to deal with the timeliness issue regarding those three defendants.[3]

For section 12(2) claims to be valid against defendant Smith (assuming that plaintiffs successfully amend their complaint to allege section 12(2) liability on the part of Smith), those claims must be limited to sales occurring on or after May 12, 1985, that is, three years before plaintiffs named Smith as a defendant on the section 12(2) claim.[4] Plaintiffs who purchased Investia stock before that date must relinquish their section 12(2) claims against Smith, and the complaint should be modified accordingly. Thus, the section 12(2) claims of plaintiffs Smedberg, Schlecht, and Wictor are time-barred, as are the claims of plaintiffs Levine and Carter regarding purchases prior to May 12, 1985.

### D. The section 10(b) and Rule 10b–5 claims against Law Firm Defendants and Smith.

Defendants Security Pacific Bank, Wilmington Trust Company, Glassman & Browning, Smith & Holland, Frederic M. Smith, and Bank of Delaware move to dismiss plaintiffs' section 10(b) and Rule 10b–5 claims on two grounds: 1) that the claims are time-barred and 2) that the complaint does not plead sufficient facts to satisfy Federal Rule of Civil Procedure 9(b). As discussed above, the section 10(b)

---

**3.** These institutional defendants were named in the complaint on May 5, 1988, more than one year after plaintiffs learned about the fraud through the state civil action.

**4.** The first version of the first amended complaint, filed on May 5, 1988, explicitly excluded Smith from the section 12(2) claim. Defendant Smith was included in the section 12(2) claim for the first time in the revised first amended complaint filed May 12, 1988.

and Rule 10b–5 claims against defendants Security Pacific Bank, Wilmington Trust Company, and Bank of Delaware are dismissed. The court now turns to the merits of the motions to dismiss made by the Law Firm Defendants and defendant Smith.

■ Regarding the first ground, California's three year statute of limitations for fraud governs alleged violations of section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1988). *Davis v. Birr, Wilson & Co., Inc.,* 839 F.2d 1369, 1369–70 (9th Cir.1988). The statute of limitations begins to run when the plaintiff has actual notice or when the plaintiff has knowledge that would alert a reasonable person to the violation. *Id.* at 1370. Plaintiffs allege that they had no knowledge of the misrepresentations and actionable omissions until the commencement of the state court action, that is, April 10, 1987. Accepting such allegations as true, the court finds that the May 12, 1988 filing of the First Amended Complaint, which named these three defendants on the section 10(b) and Rule 10b–5 claims for the first time was timely made.

■ Second, defendants attack the pleadings as insufficient under Rule 9(b) which requires that allegations of fraud be stated with particularity. To state a claim for primary liability under section 10(b) and Rule 10b–5, plaintiffs must allege: 1) an untrue statement of material fact or an omission of such fact by persons who reasonably owed plaintiffs a duty to disclose; 2) plaintiffs' reliance on that material misstatement or omission; 3) damages; and 4) that the alleged misrepresentation occurred in connection with the purchase and sale of a security. 15 U.S.C. § 78j(b); *see, e.g., Toombs v. Leone,* 777 F.2d 465, 468–69 (9th Cir.1985). In addition, plaintiffs must show that defendants had the requisite scienter, defined as "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976).

To determine whether there is a duty to disclose, the court must examine: 1) the relationship between the parties; 2) the parties' relative access to information; 3)

defendant's benefit from the relationship; 4) defendant's knowledge that plaintiff acted in reliance on the relationship; and 5) defendant's activity in initiating the relationship. *Jett v. Sunderman,* 840 F.2d 1487, 1493 (9th Cir.1988) (citing *White v. Abrams,* 495 F.2d 724, 735–736 (9th Cir. 1974)). When an impersonal market transaction occurs, no duty of disclosure is owed "absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and confidence in the other." *Jett,* 840 F.2d at 1493 (citing *Chiarella v. United States,* 445 U.S. 222, 232, 100 S.Ct. 1108, 1117, 63 L.Ed.2d 348 (1980)).

From November 1979 through December 1982, Smith was associated with the law firm of Glassman & Browning. According to plaintiffs, Smith participated in the drafting of advertising materials which included descriptions of insurance policies. Smith also represented Investia in dealing with the Los Angeles Times and the California Department of Corporations and is alleged to have advised an Investia official to deny the connection between Investia and Diamanthuset. From December 1983 until October 1, 1986, Smith was a partner of the law firm of Smith & Holland (although he was not the named partner). Smith continued to participate in the drafting of offering materials circulated to investors.

In paragraphs 102 and 103 of the complaint, plaintiffs make blanket allegations using the magic words of "contrivance, artifices to defraud, reckless disregard," yet they fail to plead with the specificity required under Rule 9(b). To allege primary liability, plaintiffs must plead causation and reliance to establish the transactional nexus between defendants' acts and plaintiffs' purchases. *Williams v. Sinclair,* 529 F.2d 1383, 1389 (9th Cir.1976), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976). If plaintiffs wish to allege primary liability on the basis of non-disclosure, they need only plead causation to establish the nexus between defendant's omissions and plaintiffs' purchases. *Id.* Plaintiffs are given leave to amend their complaint to add

particular allegations against the Law Firm Defendants and Smith, including a more complete statement of instances of fraud. As the complaint now stands, only paragraph 68 alleges specific facts regarding Smith's behavior, and that paragraph is insufficient standing alone. Plaintiffs are given thirty (30) days from the date of this order to amend their complaint if they wish to continue to claim primary liability against the Law Firm Defendants and Smith.

■ To establish secondary liability for aiding and abetting under section 10(b), plaintiffs must show: 1) the existence of an independent primary wrong; 2) knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and 3) substantial assistance in the wrong. *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). If plaintiffs wish to rely on this theory against the Law Firm Defendants, they must allege such elements. Plaintiffs are given thirty (30) days' leave from the date of this order to amend their complaint in this regard. The securities fraud allegations must make it clear whether primary or secondary liability is claimed and must meet all the requirements of Rule 9(b).

## III. *The RICO Claims*

■ Defendants Security National Bank, Wilmington Trust Company, and Bank of Delaware move for dismissal of plaintiffs' fourth claim for relief based on alleged violations of the civil RICO statute, 18 U.S.C. § 1961 et seq. However, the complaint fails to satisfy the requirement of particularity under Rule 9(b) applicable to RICO claims. *See Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400–1401 (9th Cir.1986).

Plaintiffs allege "repeated acts of mail fraud, violative of [18] U.S.C. Sec. 1341, repeated acts of wire fraud, violative of 18 U.S.C. Sec. 1343 [and] repeated acts of fraud in connection with the purchase and sale of the Investia securities." First Amended Complaint, para. 107. Yet the complaint fails to state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber*, 806 F.2d at 1401. As discussed *supra*, plaintiffs' securities-based claims against the Trust Company Defendants and the Security Pacific National Bank are dismissed. To survive a motion to dismiss the RICO claims, plaintiffs must allege with specificity instances of mail or wire fraud engaged in by these three defendants.

Also deficient is the complaint's conflation of the various provisions of the civil RICO statute. Each provision requires the pleading of specific facts and acts, and the court declines to do plaintiffs' homework. Plaintiffs are referred to a standing order developed by Judge Krenzler of the Northern District of Ohio, which outlines the necessary pleading under RICO. *See* 5 RICO L.Rep. 631, 636–7 & 638 n. 20 (1987); 3 RICO L.Rep. 804 (1986). Plaintiffs are granted leave to amend their complaint within thirty (30) days from the date of this order to correct the defects in their RICO claims. If no such amendments are timely, the claims will be dismissed with prejudice.

## IV. *State Law Claims*

### A. Claims Concerning Defendants Security Pacific National Bank, Wilmington Trust Company, and Bank of Delaware.

■ As discussed above, the federal law claims against these three defendants will be dismissed unless plaintiffs can allege facts with more particularity to support a RICO claim, the only federal claim remaining as to these defendants. If such facts are not pled within thirty (30) days from the date of this order, federal jurisdiction will not exist and the court will decline to exercise pendent jurisdiction over the state law claims pertaining to these three defendants.[5] Furthermore, since these three defendants are not purchasers or sellers of securities, counts five, six and seven (violations of the California Corporations Code) in any event cannot be maintained

---

5. It is premature for the court to address any basis for diversity jurisdiction at this time.

against the financial institution defendants. Each pendent state law claim is considered in turn below.

B. California Securities Laws.

1. *California Corporations Code Sections 25110 and 25503 (Count 5).*

The financial institution defendants move to dismiss claims under count five, which alleges violations of California Corporations Code sections 25110 and 25503 (the California analogs to federal section 12(1)). Those sections prohibit the offer and sale of a security unless it has met certain state qualifications. Claims under count five are dismissed with prejudice against Bank of Delaware, Wilmington Trust Company, and Security Pacific National Bank because, as discussed above, plaintiffs have failed to allege that these defendants engaged in the offer or sale of a security.

2. *California Corporations Code Sections 25400 and 25500 (Count 6).*

In addition to the financial institution defendants, defendant Smith moves to dismiss claims under count six, which alleges violations of California Corporations Code sections 25400 and 25500. These sections establish liability for unlawful acts or misrepresentation by those who induce sales or purchases of securities. Under the same logic compelling dismissal of the claims in count five against the financial institution defendants, the claims in count six must also be dismissed against these defendants.

■ As to defendant Smith, the statute of limitations bars actions brought more than one year after the plaintiff's discovery of the facts, or more than four years after the act or violation occurred, whichever occurs first. Cal.Corp.Code § 25506. For the majority of plaintiffs in the instant case, the one year statute of limitations after discovery applies because it occurred first. The one year statute of limitations bars these plaintiffs' claims against the defendant Smith, since Smith was not named until May 12, 1988,[6] more than one

year following the discovery of relevant facts.

Where the four year statute of limitations applies to plaintiffs' claims, those claims are also barred as untimely. All plaintiffs' claims against Smith therefore are dismissed with prejudice with respect to count six.

3. *California Corporations Code Sections 25401 and 25501 (Count 7).*

The financial institution defendants, as well as the Law Firm Defendants and Smith, seek to dismiss plaintiffs' claims alleging written or oral communication stating an untrue fact or the omission of a material fact in connection with the sale or purchase of a security. Cal.Corp.Code §§ 25401 and 25501. This claim finds its analog in section 12(2) of the 1933 Act. For the reasons stated above, this claim against the financial institutions is dismissed with prejudice.

The statute of limitations bars plaintiffs' claims against the Law Firm Defendants and Smith. Cal.Corp.Code § 25506. The court therefore dismisses with prejudice this claim against Law Firm Defendants and Smith.

C. State Common Law Claims against the Law Firm Defendants and Smith.

■ The Law Firm Defendants argue that plaintiffs' claims alleging negligent misrepresentation (count nine), breach of fiduciary duty (count ten), negligence (count eleven), unfair business practices (count twelve), and professional negligence (attorney malpractice) (count fourteen), are time-barred. First, the court notes that plaintiffs have engaged in the frequent, wearisome practice of heaping up counts based upon the same facts and the same theory. Stripped of their verbiage, each of these counts amounts to nothing more than a professional negligence claim, and the statute of limitations discussion below applies to all of them. Furthermore, plaintiffs have lumped all the defendants together in these claims and have failed to allege with specificity the duty breached by

---

**6.** *See* note 4, *supra,* and accompanying text.

**590**

any of these defendants. For these reasons alone the claims must be dismissed.

■ As to the statute of limitations for counts other than count twelve, California Code of Civil Procedure section 340.6 provides that an action against an attorney for wrongful act or omissions, other than fraud, "arising in the performance of professional services" must be brought within one year following discovery of the facts or four years from the actual date of the wrongful act or omission, whichever occurs first.

According to the complaint, defendant Smith was associated with the law firm of Glassman & Browning from November 1979 until December 1982. Plaintiffs allege that Glassman & Browning committed certain wrongful acts as a result of defendant Smith's activities while he was at the law firm. However, since Smith's association with the firm ended more than four years before the filing of the complaint here, these state law claims against Glassman & Browning are barred and are dismissed with prejudice.

■ Plaintiffs also allege wrongful acts or omissions by the law firm of Smith & Holland from January 1983 to October 1986, when defendant Smith was employed as a partner. However, the one year statute of limitations provision of California Code of Civil Procedure section 340.6 bars these claims, since the plaintiffs admit that they had notice as of April 10, 1987. Defendant Smith & Holland was not named in this claim until May 5, 1988, when the first version of the first amended complaint was filed. These claims against Smith & Holland are dismissed as untimely. As to defendant Smith, the one year statute of limitations also applies to his activities and the claims against him accordingly are dismissed.

*Courtney v. Waring,* 191 Cal.App.3d 1434, 237 Cal.Rptr. 233 (1987), cited by plaintiffs, is inapposite to the case at bar. In *Courtney,* the court found that the statute of limitations did not bar plaintiffs from alleging legal malpractice where the attorney defendants were not named until October 1981, even though the initial complaint had been filed in October 1980. *Id.* at 1444 n. 10, 237 Cal.Rptr. 233. Plaintiffs in *Courtney* asserted that they did not become aware of the acts allegedly committed by the attorney defendants until January 1981. *Id.* The *Courtney* court concluded that the allegations in the first complaint were not specific and that "it [was] exceedingly plausible that ... [plaintiffs] failed to suspect that professional negligence contributed to the fiasco." *Id.*

In the instant case, by contrast, the California Attorney General filed a lawsuit on April 10, 1987 alleging the basic set of facts asserted by plaintiffs. At that point, plaintiffs clearly had notice of the problems involving their investments and of the consequent legal issues. Furthermore, plaintiffs have made no attempt to explain why they could not name the attorney defendants within the time period of the statute of limitations. Since the claims are time-barred, counts nine, ten, eleven, and fourteen are dismissed with prejudice against defendants Smith and Smith & Holland.

■ The only state law claim that stands apart is count twelve. The unfair business practices claim is alleged against all defendants except the law firms; it includes Smith. Again, the allegations lump all the defendants together and fail to state which practices or conduct by Smith misled plaintiffs. Plaintiffs pile up unnecessary and perhaps inapplicable claims. The unfair competition law codified in section 17200 et seq. of the California Business and Professions Code was not addressed to conduct such as Smith's. Furthermore, the statute contemplates primarily injunctive relief. In the context of this case it offers no remedies that plaintiffs cannot achieve using other causes of action. Nonetheless, it is not barred by the statute of limitations, which is four years from accrual. Cal.Bus. & Prof.Code § 17208. Count twelve is dismissed with leave to amend within thirty (30) days of the date of this order, only in the event that plaintiffs can state a federal claim as required by this order *and* a section 17200 claim that fits the statute.

## V. *Conspiracy Claim (Count 13)*

██ The court also notes than claim thirteen makes no sense whatsoever. It purports to be a claim for rescission or damages under various unspecified state and federal securities laws based on a conspiracy theory. In this one claim, plaintiffs merge together unidentified securities law provisions and various participant theories of liability, including conspiracy and aiding and abetting. Conspiracy itself is not an independent cause of action. Conspiracy may provide a theory of liability for establishing an independent tort or claim. *See, e.g., Halberstam v. Welch*, 705 F.2d 472, 479 (D.C.Cir.1983); *Agnew v. Parks*, 172 Cal.App.2d 756, 762, 765, 343 P.2d 118 (1959); *see also* 4 B. Witkin, *Summary of California Law* § 31 (8th ed. 1974) ("no separate tort of civil conspiracy and no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results therefrom.")

Theories of liability are not fungible. They must be specifically and separately alleged. Moreover, the conspiracy theory must be supported by facts alleging an agreement. *Halberstam*, 705 F.2d at 477. Plaintiffs make no attempt to state the necessary conspiracy allegations, *see Pharo v. Smith*, 621 F.2d 656, 669 (5th Cir. 1980), and fail to link them to any specific state or federal statutory provision. *See also Hudson v. Capital Management Int'l, Inc.*, [1982–82 Transfer Binder] Fed. Sec.L.Rep. (CCH) para. 99,221 at 95,895 (N.D.Cal.1982) The significance of this omission is heightened by the Supreme Court's decision in *Pinter v. Dahl*, 486 U.S. 622, ——, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Even if before *Pinter* it was conceivable that conspiracy liability might be alleged, *see Pharo*, 621 F.2d at 668, it is now clear that such a theory is foreclosed. *See Pinter*, 108 S.Ct. at 2081. On the other hand, there may be conspiracy liability under section 10(b).

Accordingly, the thirteenth count fails to state any claim and is dismissed.

## VI. *Plaintiff's Motions*

██ The plaintiffs' motion for preliminary approval of a partial settlement with defendant Bank of Delaware, for certification of a settlement class, and for approval of class action settlement notice is premature, and is therefore denied without prejudice.

## CONCLUSION

IT IS HEREBY ORDERED THAT defendant Figlioli's motion for joinder in the dismissal motions of defendants Security Pacific National Bank and Bank of Delaware is DENIED.

IT IS FURTHER ORDERED that the motions of defendants Security Pacific National Bank, Bank of Delaware and Wilmington Trust Company for dismissal of the claims in counts one (section 12(1)); two (section 12(2)); and three (section 10(b) and rule 10b–5) are GRANTED, and the motion of defendant Smith for dismissal of the claim in count one (section 12(1)) is GRANTED.

IT IS FURTHER ORDERED THAT certain claims of plaintiffs Smedberg, Schlect, Wictor, Levine and Carter in count two are dismissed as untimely, as described above.

IT IS FURTHER ORDERED THAT plaintiffs are given leave to amend within thirty (30) days to rectify deficiencies in their complaint concerning claims against defendant Smith in count two (section 12(2)), and against defendants Smith, Glassman & Browning and Smith & Holland with respect to count three (section 10(b) and rule 10b–5), and against all defendants named in count four (RICO).

IT IS FURTHER ORDERED THAT counts five, six, and seven are dismissed with prejudice as to defendants Security Pacific National Bank, Wilmington Trust Company, and Bank of Delaware, count six is dismissed as to defendant Smith, and count seven is dismissed as to defendants Smith, Smith & Holland and Glassman & Browning.

IT IS FURTHER ORDERED THAT counts nine, ten, eleven, and fourteen are dismissed as to defendants Smith & Hol-

**592**

land, Glassman & Browning, and Smith, and that count twelve be dismissed with leave to amend within thirty (30) days of the date of this order as to defendant Smith.

IT IS FURTHER ORDERED THAT count thirteen is dismissed as to all defendants.

IT IS FURTHER ORDERED THAT plaintiffs' motion for preliminary approval of partial settlement with defendant Bank of Delaware, for certification of settlement class, and approval of class action settlement notice is DENIED.

IT IS SO ORDERED.