Filed 4/25/14  Whitehill v. Valente CA1/1
Opinion received for posting 6/18/14
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL WHITEHILL,<br><br>    Defendant and Cross-Appellant,<br><br>v.<br><br>SUZANNE VALENTE,<br><br>    Plaintiff and Appellant. | A137613<br><br>(San Mateo County<br>Super. Ct. No. CIV508978) |

In this appeal, Suzanne Valente challenges the trial court's sustaining of Michael Whitehill's demurrer to her complaint without leave to amend.  Valente argues that while the one-year statute of limitations set forth in Code of Civil Procedure section 340.6[1] is applicable to attorney malpractice actions, it does not apply to her claims because they are not based on legal malpractice.  Whitehill cross-appeals from the court's ruling denying his section 128.7 motion for sanctions.  He claims the court erroneously ruled he had not satisfied that statute's 21-day safe harbor provision.  We affirm the ruling on the demurrer and reverse the ruling on the sanctions motion.

---

[1] All further statutory references are to the Code of Civil Procedure except as otherwise specified.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. *The Parties*

Whitehill is an attorney. Valente is a dentist who started her own practice in 1984. She eventually became disabled and filed a claim with her insurer, which was denied in 2001. She then hired Whitehill to represent her in the disability insurance matter.

### II. *Allegations in the Complaint*

On October 12, 2011, Valente filed her complaint against Whitehill. We take the following facts from the allegations stated therein and from judicially noticed material.

In January 2003, the parties entered into a written contingency fee agreement. Whitehill agreed to represent Valente in the case against her disability insurer, UnumProvident Corporation (UnumProvident). Whitehill represented her continuously from January 13, 2003 until February 11, 2008. The contingency fee agreement provided that if UnumProvident appealed, or if Whitehill determined an appeal was proper and Valente agreed, he would handle the appeal without additional charge.

In November 2004, the case proceeded to trial and the jury found in favor of Valente on the theories of breach of contract and breach of the covenant of good faith. It awarded her damages in the sum of $1,143,793.33. (*Valente v. UnumProvident Corp*. (2006) 2006 WL 2512507.) The jury, however, found in favor of UnumProvident on the issue of punitive damages.

UnumProvident paid the judgment and did not appeal the verdict. Whitehill did not believe an appeal was appropriate. Valente did desire to appeal, and consulted with other attorneys on the matter. They advised her that her trial counsel would be best able to proceed with an appeal. Whitehill told Valente he would handle an appeal for the sum of $65,000 to cover his services and costs, which would be reimbursed to her if she were to win at a retrial on the punitive damages issue. She agreed to these terms and a supplemental agreement was drafted confirming the parties' understanding. The appeal was filed, and Division Five of this court reversed the judgment on the punitive damages issue. (*Valente v. UnumProvident Corp., supra,* 2006 WL 2512507.) The case was remanded to the trial court.

Whitehill began preparing for the new trial and a trial date was set for October 15, 2007. Before trial, UnumProvident made a settlement offer. Whitehill advised Valente to accept the offer, but she rejected it. Whitehill then informed her that she would have to advance him $60,000 in costs for the new trial. She paid the sum in October 2007. The trial was continued to February 11, 2008.

In January 2008, Whitehill demanded another $30,000 to continue with the retrial. Valente advised Whitehill that she wished to discontinue her relationship with him and substitute new counsel. She hired a new attorney.

Valente's new counsel continued the trial to August 2008. Whitehill was uncooperative with the new attorney and refused to fee share. Because of his unwillingness to fee share, the new attorney was unable to settle the case. Though Whitehill had already billed her for expert witness fees, the expert refused to testify in the retrial. Whitehill failed to inform Valente that he had drafted a contract obligating the expert to participate in the case only if Whitehill was still the attorney for Valente. She was unable to retain a new expert in time for trial. The new trial ended in the same result as the first case, with the jury ruling in favor of UnumProvident with respect to Valente's punitive damages claim.

## III. Causes of Action

Valente's complaint contains two causes of action for breach of contract, along with claims for unfair business practices, fraud, and breach of fiduciary obligations.

## IV. The Demurrer and Motion for Sanctions

On December 23, 2011, Whitehill's attorney sent a letter to Valente's counsel explaining that the current action was time-barred. A telephone conversation concerning this issue and an additional letter from Whitehill's attorney followed.

On February 29, 2012, Whitehill filed a demurrer to the complaint alleging the action was time-barred under the applicable statutes of limitations (§§ 340.6, 338, subd. (d)). That same day, Whitehill's attorney sent a letter to Valente's counsel informing him that if he did not withdraw the complaint within 21 days, Whitehill would file a motion

for sanctions pursuant to section 128.7, subdivision (c)(1). The letter enclosed a copy of the proposed motion for sanctions. The motion states the hearing date as May 2, 2012.

According to an e-mail message sent to Valente's counsel by Whitehill's counsel on March 23, 2012, the May hearing date had been available per the superior court's Web site. Subsequently, the court clerk informed Whitehill's counsel that the Web site was incorrect, and the first available date for the hearing was actually July 3, 2012. The e-mail goes on to state that the sanctions motion would shortly be filed. Whitehill's attorney indicated his belief that the safe harbor requirement contained in section 128.7 would be unaffected, as the hearing date was set more than three months into the future.

On March 23, 2012, Valente filed a request for dismissal as to the fraud cause of action only.

On April 2, 2012, Whitehill filed and served his notice of motion for sanctions pursuant to section 128.7. The date of hearing stated on the filed motion is July 3, 2012.

On June 20, 2012, Valente filed her opposition to the motion for sanctions. In support of her contention that her complaint was not frivolous, she relied heavily on an unpublished Court of Appeal decision from the Second District as "a sound basis for [Valente] to believe that her claims had merit." She also asserted Whitehill's motion was procedurally flawed because it contained an incorrect hearing date when it was initially served on her. After the hearing date was changed, Whitehill did not wait 21 days before filing the corrected motion with the court, arguably failing to comply with section 128.7's notice requirements.

## V. The Trial Court's Rulings

On July 2, 2012, the trial court issued its tentative ruling sustaining the demurrer without leave to amend as to the entire complaint. The tentative ruling also indicates the court's intent to grant Whitehill's motion for sanctions in the sum of $8,012 on the ground that "it was not reasonable for [Valente] to rely on a single non-published decision in filing a verified complaint which demonstrates, on its face, that [Valente's] claims are time-barred."

4

On July 3, 2012, the trial court adopted its tentative ruling on the demurrer, but reversed its ruling on the motion for sanctions. The court's stated reason for denying the sanctions motion was that Whitehill had failed to comply with the 21-day safe harbor provision of section 128.7. The court noted the two motions served by Whitehill were identical; yet the motion filed with the court had a hearing date for July 3, 2012, while the hearing date on the mailed notice to Valente was stated as May 2, 2012. The court viewed this discrepancy as constituting defective notice.

On July 19, 2012, the trial court filed its order sustaining Whitehill's demurrer without leave to amend and denying the motion for section 128.7 sanctions.

On November 28, 2012, the trial court filed its judgment in favor of Whitehill. This appeal and cross-appeal followed.

## DISCUSSION

### I. Standards of Review

Valente's appeal follows the sustaining of a demurrer. The application of the statute of limitations to undisputed facts is a purely legal question (see *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112); accordingly, we review the lower court's rulings de novo. We must take the allegations of the operative complaint as true and consider whether the facts alleged establish Valente's claims are barred as a matter of law. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810-811.) Additionally, on appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, "unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. [Citations.] If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended. [Citation.]" (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

As to Whitehill's cross-appeal, the standard of review on a motion brought under section 128.7 is generally the abuse of discretion standard. (*Guillemin v. Stein* (2002)

5

104 Cal.App.4th 156, 167.) "However, the proper interpretation of a statute relied upon by the trial court as its authority to award sanctions is a question of law, which we review de novo. [Citations.]" (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698; see *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 130 [whether party complied with safe harbor provision of sanction statute is "one of statutory interpretation, which is a pure question of law"].)

## II. The Demurrer Was Properly Sustained

### A. Affirmative Defense of the Statute of Limitations

"An affirmative defense, the statute of limitations exists to promote the diligent assertion of claims, ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed. [Citations.] The duration of the limitations period marks the legislatively selected point at which, for a given claim, these considerations surmount the otherwise compelling interest in adjudicating on their merits valid claims. [Citations.]" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

According to Valente, the gravamen of her complaint is that Whitehill's "unlawful demands for money when [he] legally represented [Valente], and [his] post-representation misconduct, including misrepresenting his right to fees and unwillingness to disclose billing records" caused her damages. It is undisputed that Valente incurred her damages in August 2008, when the jury in the retrial decided against awarding her punitive damages. Thus, her damages were incurred a little over three years before the operative complaint was filed.

### B. Section 340.6

Section 340.6 provides, in relevant part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . ." In construing this statute, we apply the following well-

6

established rules of statutory construction: " '[We] ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484-485.)

### C. Breach of Contract Claims

Valente contends that section 340.6 does not apply to her breach of contract claims because the claims are not based on the quality of Whitehill's professional services as an attorney. We note our colleagues in the Fourth Appellate District, Division One, recently stated: "The plain language of section 340.6 applies to *all* actions, with the exception of those actions asserting actual fraud, that are brought against an attorney for that attorney's 'wrongful act or omission . . . arising in the performance of professional services.' [Citation.] The phrase ' "wrongful act or omission" ' is 'used interchangeably as a reference to both tortious and contractual wrongdoing.' [Citation.] The words of the statute are quite broad, but they are not ambiguous: any time a plaintiff brings an action against an attorney and alleges that attorney engaged in a wrongful act or omission, other than fraud, in the attorney's performance of his or her legal services, that action must be commenced within a year after the plaintiff discovers, or should have discovered, the facts that comprise the wrongful act or omission." (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 194-195 (*Yee*).)

Valente asserts her case does not fall within section 340.6 because Whitehill "breached his contract with [Valente] by taking more money from [her] than he was entitled under a written contract," referring to the combined additional $125,000 in fees and costs that he demanded after the initial trial had concluded. She claims that here, "the wrongful conduct arose not from any attorney-client relationship, but from the

7

contract that [Whitehill] signed with [Valente]." Thus, she asserts the claims did not arise "in the performance of professional services" within the meaning of section 340.6. We disagree.

It is undisputed that the contract was an integral part of the parties' business relationship. The contract was entered into solely as a means of securing Whitehill's legal services. Moreover, Valente's allegations of breach of contract are based entirely on his failure to perform legal services in accordance with the terms of these agreements. For example, her first cause of action for breach of contract alleges: "Although the Contingency Agreement required [Whitehill] to handle any appeal, [Whitehill] forced [Valente] to pay $65,000 in order to have him handle the appeal."[2] Significantly, she does not allege Whitehill breached the contract by failing to perform any *nonlegal* services.

Thus, the present case is distinguishable from the case Valente primarily relies on, *Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54 (*Quintilliani*). In that case, the Court of Appeal held that section 340.6 did not apply to bar a cause of action for negligent performance of administrative consulting services. (*Quintilliani,* at p. 67.) While the court defined the term "professional services" as meaning "services performed by an attorney which can be judged against the skill, prudence and diligence commonly possessed by other attorneys" (*id*. at p. 64), the context of this remark shows that the distinction the court sought to draw was between the provision of legal services by attorneys, as opposed to the provision of nonlegal services undertaken by persons who also happen to be attorneys. Unlike Valente here, the appellate court in *Quintilliani* was not attempting to draw fine lines between functions that an attorney performs in actively representing his client and those that occur naturally as a part of the business relationship between lawyers and their clients. As the court observed: "[L]egal malpractice must be limited to negligence in the providing of legal services. While some lawyers are

---

[2] Similarly, her second cause of action for breach of contract alleges that Whitehill breached the agreement "by forcing [Valente] to advance $60,000 for the costs of the retrial . . . ."

8

undoubtedly successful concert promoters, they are not held to the standard of a lawyer in producing concerts because the standard is stated in terms of skills possessed by a lawyer and the professional services provided by the lawyer, not the business standards by which concert promoters are judged." (*Id*. at p. 64, fn. omitted.)

Valente asserts the four-year statute of limitations contained in section 337, which pertains to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing" applies here. Where more than one statute might apply to a particular claim, " 'a specific limitations provision prevails over a more general provision.' [Citation.]" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1316-1317.) Given that section 340.6 is a more specific statute of limitations, applicable only to actions against attorneys for their wrongful acts or omissions, its provisions prevail over the more general statute of limitations for claims for breach of contract. (See also *Levin v. Graham & James* (1995) 37 Cal.App.4th 798, 805 [cause of action for refund of legal fees subject to section 340.6].)

Based on the broad interpretation accorded to section 340.6, we conclude that claims based on an attorney's breach of a retainer agreement with a client are claims that "aris[e] in the performance of professional services." (§ 340.6, subd. (a).) As the appellate court in *Yee* stated: "Yee's contention that the phrase 'a wrongful act or omission' in section 340.6 refers only to 'malpractice' is undermined by the fact that the term 'malpractice' does not appear anywhere in the statute. If the Legislature had wanted to limit section 340.6 to malpractice actions between clients and attorneys, it could have done so by making it clear that the actions to which it applies are limited to those brought by a client or former client against his or her attorney for malpractice. The Legislature did not do this, and instead, enacted a *broadly* worded statute that limits the time within which any plaintiff may bring an action against an attorney for the attorney's conduct 'arising in the performance of professional services.' " (*Yee, supra,* 220 Cal.App.4th at p. 196; see also *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 883 [section 340.6 applies to claims for malicious prosecution].) We conclude the breach of contract allegations in Valente's complaint are governed by section 340.6.

9

### D. Unfair Business Practices

The same result obtains as to Valente's unfair business practices claim. Valente alleges Whitehill's wrongful business practices caused her to suffer damages when she was compelled to retain new counsel and pay additional attorney fees. The complaint states that Whitehill's conduct "offends the established public policy that an attorney's representations to his/her client are accurate, and that a client can rely on his/her attorney to not misrepresent the state of the law." As the allegation demonstrates, the wrongful conduct alleged clearly "[arose] in the performance of professional services." (§ 340.6, subd. (a).) While Valente argues that the conduct complained of occurred after Whitehill ceased to represent her, there can be no dispute that the allegations all have their genesis in the parties' attorney-client relationship. Thus, this cause of action merely repackages Valente's allegations against Whitehill that are based on "wrongful act[s] or omission[s] . . . arising in the performance of professional services," (§ 340.6, subd. (a)), and therefore, it comes within the one-year limitations period.

In her opening brief on appeal, Valente relies solely on *Levine v. Diamanthuset, Inc.* (N.D.Cal. 1989) 722 F.Supp. 579, 590 (reversed on other grounds in *Levine v. Diamanthuset, Inc.* (9th Cir. 1991) 950 F.2d 1478) to support her position that her unfair practices claim is governed by the four-year statute of limitations in Business and Professions Code section 17208. That case held that an unfair practices claim against attorneys was not barred by section 340.6. (*Levine v. Diamanthuset, Inc.*, *supra*, 722 F.Supp. at p. 590.) We note the district court's ruling on this point contains almost no analysis and, of course, does not address subsequent California cases giving section 340.6 a broad interpretation. We decline to follow it.

### E. Breach of Fiduciary Duty

Finally, Valente asserts section 340.6 does not apply to her breach of fiduciary duty claim because the wrongful conduct (including Whitehill's failure to disclose that the expert witness would not be obligated to testify at retrial) arose after his professional services were terminated. In her reply brief, she relies on *David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 893 (*Welch*). The court in *Welch* rejected the

argument that section 340.6 was applicable to a breach of fiduciary duty claim: "[W]here a cause of action is based on a defendant's breach of its fiduciary duties, the four-year catchall statute set forth in [section 343] applies." But that case is inapposite because the client there was not suing the attorney for acts that arose from the attorney-client relationship, but instead for acts outside of that relationship, i.e., usurping the client's business. (*Welch,* at pp. 888-889.) Indeed, subsequent courts have refused to follow *Welch* on the ground that it did not involve a breach of fiduciary duty in the context of legal malpractice. (See *Quintilliani, supra,* 62 Cal.App.4th at p. 68 ["we agree that *Welch* should not be followed, since it did not cite any authority dealing with a breach of fiduciary duty in the context of attorney malpractice"]; *Pompilio v. Kosmo, Cho & Brown* (1995) 39 Cal.App.4th 1324, 1329; *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1369 [disagreeing with *Welch* because it did not cite any authority involving a breach of fiduciary duty in the context of legal malpractice and did not discuss the legislative history of section 340.6].) Here, we conclude Valente's breach of fiduciary duty cause of action is also governed by the one-year statute of limitations in section 340.6 because it arises out of the parties' attorney-client relationship. For all the reasons stated above, we affirm the trial court's ruling on the demurrer.[3]

### III. *Whitehill's Motion for Sanctions*

Under section 128.7, "[a] party seeking sanctions must follow a two-step procedure. First, the moving party must serve on the offending party a motion for sanctions. Service of the motion on the offending party begins a [21]-day safe harbor period during which the sanctions motion may not be filed with the court. During the safe harbor period, the offending party may withdraw the improper pleading and thereby avoid sanctions. If the pleading is withdrawn, the motion for sanctions may not be filed with the court. If the pleading is not withdrawn during the safe harbor period, the motion for sanctions may then be filed." (*Malovec v. Hamrell* (1999) 70 Cal.App.4th 434, 440.)

---

[3] We observe Valente does not argue that the defects present in her complaint can be cured by amendment.

Section 128.7, subdivision (c)(1), provides, in part: "A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion *shall be served as provided in Section 1010,* but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. . . ." (Italics added.) Section 1010 specifies that notices "must be in writing, and the notice of a motion, other than for a new trial, *must state when,* and the grounds upon which it will be made, and the papers, if any, upon which it is to be based." (Italics added.)

As noted above, the notice of motion served on Valente on February 29, 2012 contains a hearing date of May 2, 2012. The motion was not filed until April 2, 2012, which allowed for more time than required by the statutory safe harbor period. However, the filed motion contains a July 3, 2012 hearing date. The trial court concluded that because the copy of the notice of motion mailed to Valente did not reflect the correct hearing date, the notice did not comply with section 127.8's safe harbor provision. We disagree.

It is correct that "[a] formal noticed motion is required to begin the 21-day period. [Citation.] Strict compliance with the statute's notice provisions serves its remedial purpose and underscores the seriousness of a motion for sanctions. [Citations.]" (*Galleria Plus, Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535, 538 (*Galleria*).) In *Galleria,* the appellate court held that a notice served under section 128.7 is defective if it does not include the date and time of the motion. The face page and body of the document at issue in that case stated that the motion would come on for hearing "on AAA at BBB." (*Galleria,* at p. 537.) We do not disagree with the holding of *Galleria,* however, the present case is clearly distinguishable.

Unlike in *Galleria,* here Whitehill's proposed motion, as required by law, contained a hearing date for the motion: May 2, 2012. The proposed motion was served on Valente's counsel more than 21 days before it was actually filed, as provided by law.

12

Valente received the proposed motion and did nothing. The fact that the hearing was rescheduled for a later date, as reflected in the motion that was actually filed with the court, does not detract from the purpose of section 128.7, which is to encourage parties to withdraw meritless complaints early in the proceedings. In all other respects, the filed motion was identical to the motion served on Valente. We also note it is not unusual for motions to be heard subsequent to the date set forth in the initial moving papers. Accordingly, we conclude the trial court's justification for denying Whitehill's motion for sanctions fails and, therefore, the order must be reversed.[4]

## IV. Motions for Sanctions on Appeal

On November 1, 2013, Whitehill filed a motion for sanctions against Valente for pursuing a frivolous and dilatory appeal. Whitehill requested $14,612.82 for the attorney fees incurred in responding to Valente's brief and preparing his motion for sanctions.

On November 22, 2013, Valente also filed a motion for sanctions against Whitehill for pursuing a frivolous and dilatory cross-appeal. Valente requested $19,000 for attorney fees incurred in responding to Whitehill's brief and preparing her motion for sanctions.

Section 907 permits courts to impose sanctions when an appeal is frivolous or taken solely for delay. (See also Cal. Rules of Court, rule 8.276(a)(1).) An appeal is deemed frivolous under only two circumstances: when it is prosecuted for an improper motive or when it is indisputably without merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650.) Here, there is no evidence either party pursued their appeal for an improper motive—to harass the other party or delay the effect of the adverse judgment. Hence, the only ground for finding the appeal frivolous is lack of merit—that any reasonable attorney would agree the appeal is completely without merit. (*Ibid.*)

In determining whether an appeal is frivolous, courts recognize that appellate counsel and their clients have a right to present issues that are arguably correct, even if it

---

[4] We express no opinion on the merits of the motion for sanctions and decline Whitehill's request to reinstate the trial court's tentative ruling granting sanctions in the amount of $8,012.

is extremely unlikely they will prevail.  Further, sanctions pose a serious chilling effect on the assertion of a litigant's rights.  Thus, an appeal that is simply without merit is not by definition frivolous and should not incur sanctions.  And courts should impose sanctions sparingly to deter only the most egregious conduct.  (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 650-651.)

That we have reversed the trial court's ruling on Whitehill's motion for sanctions essentially moots Valente's motion for sanctions on the cross-appeal.  While we have affirmed the lower court's ruling on the demurrer to the complaint, we do not believe the appeal justifies the imposition of sanctions against Valente.  The parties' motions for sanctions on appeal are both denied.

## DISPOSITION

The order sustaining the demurrer to Valente's complaint without leave to amend is affirmed.  The order denying Whitehill's motion for sanctions under section 128.7 is reversed.

_____
Dondero, Acting P.J.

We concur:


_____
Banke, J.


_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14